## C. E. SMITH ET AL. v. ELLIOTT & DEATS.

1. An acknowledgment of a married woman failing to show that she willingly *signed* the instrument, although correct in every other respect, is fatally defective.

2. A *femme covert* cannot convey a title to her lands, nor a homestead, except by a deed duly executed upon her private examination made as the law directs. Her signature to a deed without such examination is a nullity.

3. It is well settled that whenever a statute affects a contract, not only the statute itself but the legal construction of the statute by the courts of the State enter into and form part of the contract.

4. He who takes a deed of trust from the husband and wife takes it with the contingency, that should the husband die before the execution of the trust his remedy, if any he has, must be in the probate court, and not through the acts of the trustee.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

*F. W. Chandler, James H. Burt,* and *James B. Morris,* for appellants.—I. The property in controversy was community property, and the homestead of Mrs. Smith and her deceased husband, E. B. Smith, during his lifetime, and herself and minor daughter from and after his death.

The presumption of law is that property conveyed to the wife belongs to the community, and the direction of a husband to make out a deed in the name of the wife will not, of itself, rebut this legal presumption. In this case, Slaughter, the locator, might have conveyed to either husband or wife; his conveyance to either has the like effect, viz., to vest the property in the community. Where the husband intends to relinquish his right in the community property, and to transfer it to his wife, his act must be explicit and such as to leave no doubt of his intentions. In the case of Higgins v. Johnson (20 Texas, 389) the same subject is discussed, and after glancing at

the general rules with reference to the rights of parties where the purchase is made by one, but conveyance is in the name of another, Chief Justice Hemphill, speaking for the court, said:

"There is no doubt that where a purchase is made with community funds, a mere direction by the husband to the vendor to execute the conveyance to the wife will not operate a change of estate, or convert community into the wife's separate property. The acquisitions of the joint or separate labor or industry of the partners become common property, and as a general rule, deducible from our former laws, property purchased during the marriage, whether the conveyance be in the name of the husband or the wife, or in the name of both, is *prima facie* presumed to belong to the community."

After the purchase of the property in controversy, E. B. Smith and appellant C. E. Smith moved upon, occupied and designated it as their homestead.

In the case of Mills v. Von Buskirk, 32 Texas, 362, a member of this court, His Honor Judge Walker, in delivering the opinion of the court, said: "Among the old jurists, three things, life, liberty and property, were held sacred by the law, and we are disposed to protect the homesteads of families almost with equal watchfulness."

The owner himself, without the consent of his wife, expressed as directed by the Legislature, was prohibited from alienating the homestead. No power to encumber it is conferred on the husband, nor power given to the Legislature to confer on him such power. The result of which is, the conveyance of the homestead is strictly a statutory conveyance, and to be valid must be made strictly in conformity thereto. The husband, with the consent of the wife, cannot alien or convey the homestead in any other way than that pointed out and provided by the Constitution and laws passed in conformity thereto.

To allow the wife to assent to an encumbrance of the homestead with a deed of trust, or other conditional instrument, prepares the way for thriftless, reckless, dissipated or imbecile husbands, with the aid of unscrupulous and designing speculators and sharpers, by blandishments, to place before unsuspecting wives the evil day deferred, and of inveigling them unwittingly into assenting to render themselves destitute of the home and shelter guaranteed to them by the Constitution.

In 1851 this was a new question in this State, under the Constitution of 1845, and the statute enacted in pursuance thereof; and in discussing the question arising on a mortgage, in a case of such importance as to elicit opinions from all three of the judges (Sampson & Keen v. Williamson, 6 Texas, page 102), Judge Lipscomb said, in speaking of the homestead: "For the homestead is not her separate property. She has no property in it. The husband is only permitted to alienate it with her assent in the mode pointed out by the Legislature; and the Legislature has not pointed out a mortgage as the mode. Until there has been legislative action the husband would be entirely without power of sale, and when the Legislature pointed out the mode it must be strictly pursued, and excludes all others. Chancellor Kent says: "But if the execution of a power be prescribed by a particular method, it implies that the mode proposed is to be followed, and it contains a negative upon every other mode. The Constitution expressly prohibits a forced sale, and only permits a voluntary sale by a married man when it is with the assent of the wife, in the mode pointed out by law. The law has pointed out the mode in which it shall be voluntarily alienated, and this method is not by mortgage." "It is well settled that a compliance with the requirements of this statute is indispensable to the alienation of the wife's separate es--

tate or of the homestead." (Cross v. Everts, 28 Texas, 532; Callahan v. Patterson, 4 Texas, 62; Green v. Chandler, 25 Texas, 148; Nichols v. Gordon, 25 Texas Sup.; 109; Roy v. Bremond, 22 Texas, 628.)

Without such compliance, her deed, signed, attested and delivered, is as though it had never been written. (Young v. Benthuysen, 30 Texas, 770.)

"The Constitution and laws have so hedged in a homestead from sale that courts are required to scrutinize very closely to see that all the constitutional and statutory provisions have been fully complied with before they will pronounce a sale of the same to be valid." (Boatright v. Peck, Galveston Term, 1870.)

"An acknowledgment of a deed by a married woman, in order to be binding on her, must be done in a particular manner." (Roy v. Bremond, 22 Texas, 627.)

II. Upon the husband's death the power of the trustee to sell ceased. E. B. Smith died on the twenty-seventh of April, 1867. On the seventh of July, 1868, the property was sold under the trust deed and purchased by appellees. This sale, under the ruling and decisions of this court, was a nullity and conveyed no title. (Robertson v. Paul, 16 Texas, 474; Davis & Stewart v. Turner, 26 Texas, 100; Shepherd v. Cassidy, 20 Texas, 28; Gouhenant v. Cockrell, Id., 96; James v. Fulcrod, 5 Texas, 519.)

III. The deed of trust from E. B. Smith and appellant C. E. Smith is and was a *nudum pactum*, and no title passed from or by virtue of its execution. (Ralston & Sebastian v. Bullitts, 3 Bibb, 361; Boone v. Shackelford, 4 Bibb, 67; Green v. Biddle, 8 Wheat., 92; Bronson v. Kinzie, 1 How., 319; McCracken v. Hayward, 2 How., 612; People v. Bond, 10 California, 570; Ogden v. Sanders, 12 Wheat., 231; Von Hoffman v. City of Quincy, 4 Wallace, 550.)

IV. Had the appellant, C. E. Smith, in February, 1863, the power to mortgage or otherwise encumber her homestead for the purpose of securing creditors under the Constitution and laws of Texas?

We are confident that she had no such right.

This question was first brought before this court in the case of Sampson & Keene v. Williamson, 6 Texas, 102.

The Chief Justice, in affirming the judgment of the court below sustaining the demurrer of defendants, after having held that the power of "alienation" carried with it the power to encumber, delivered this *obiter :* "A mortgage depending for its enforcement on judicial process would be ineffectual, because a sale under such process would be forced. But a sale under a power in a mortgagee or trustee would be voluntary, and the assent of the wife would give as much validity to such mortgage as to an absolute and immediate sale."

The homestead is a character of property different under our Constitution and laws from any known to the common or civil law. Judge Lipscomb says the wife has no property in the homestead, and in the case of North v. Shearn, 15 Texas, 176, Judge Wheeler says that the law attaches a "sanctity and inviolability to the right of homestead." "But it is not given or intended for the sole benefit of the husband, or head of the family. The wife has at least an equal interest in the exemption of the homestead." (Callahan v. Patterson, 4 Texas, 62; Green v. Chandler, 25 Texas, 148; Nichols v. Gordon, 25 Texas Sup., 109; Roy v. Bremond, 22 Texas, 628; Cross v. Everts, 28 Texas, 532.)

1. The mortgagor transfers at most a *chose in action,* which is sometimes, but not by the best authorities, denominated a naked legal right.

2. This right can never, in this country, fructify into a perfect title until a sale to take place *in futuro,* either

by a decree of court or by the mortgagee or trustee act-ing under a power to sell; and

3. By force of this sale the alienation can only be made complete.

"A trustee is not justified in delegating the power of sale to a stranger, although he may doubtlessly employ a solicitor or other agent to conduct the usual details of the sale." (Hill on Trustees, 474; Id., 175.) In the case of Hawley v. James, 5 Paige, 487, the Chancellor, after deciding "that a general authority to sell and convey lands belonging to the estate, or to contract absolutely for the sale of such lands," cannot be given by trustees with a power of sale, observes: "But they may entrust an agent with an authority to make conditional sales of land lying at a distance from the place of residence of the trustees, subject to the ratification of the trustees." (Bloomer v. Waldron, 3 Hill, 361; 1 Sugd. Pow., 513; 4 Kent Com., 331; Leavett v. Peel, 25 N. Y., 474.)

The relationship the wife bears to the homestead can be classed under no other legal definition than that of trus-tee.

The opinion of both judges Hemphill and Lipscomb in the Williamson case in effect treated the wife as the trus-tee of the homestead. So do all the opinions of this court on the homestead question, so far as we can construe them, and this is correct under the definition of a trust and trustee. Hill says: "A trustee in the widest mean-ing of the term may be defined to be 'a person in whom some estate, interest or power in or affecting property of any description, is vested for the benefit of another.'"

In the case of North v. Shearn, above referred to, Judge Wheeler declares that the family has an interest in it, although the legal title is in another.

We insist, therefore, that the wife cannot encumber the homestead. 1. Because the encumbrance, if valid, must

inevitably result in a forced sale. 2. Because the power to alienate, as used in the Constitution, does not embrace the power to mortgage. 3. Because she is herself only a trustee under the Constitution, and as such can neither mortgage the trust property nor delegate her power of "alienation" to another.

The doctrine that the power conferred upon a wife of consenting to the alienation of her homestead embraces the power to encumber it, is the refinement of legal cruelty, an outrage on woman's noblest attributes, confidence and love, and should no longer have an abiding place in the jurisprudence of a Christian people.

*John A. Green,* for appellees, in an exhaustive brief, discussed the authorities cited by the counsel for appellants, and reviewed all the Texas cases bearing on the subject.

McAdoo, J.—A tract of one hundred and sixty acres of land in Travis county, composed of two purchases, acquired during the marriage of E. B. Smith and C. E. Smith, one of the appellants, is the subject matter of the suit. The deeds to this land were made to the wife, C. E. Smith, at the request of E. B. Smith, the husband. There is no proof showing that any separate funds of the wife entered into the purchase. It was doubtless community property. We, however, deem it unimportant whether it was separate or community property so far as this case is concerned.

A part of the land was acquired from Cleveland in 1855, and a part in 1858 from Wall and wife.

After the first purchase Smith and wife occupied and lived on the land as a homestead for a year or more ; and then, renting or leasing it, they first kept a boarding house in Austin, then in San Antonio, then in New Braun-

fels, then in San Antonio, using rented houses all the while, and acquiring at no time other real estate of their own.    There is proof that they regarded this land as their homestead at different times.    Indeed, we do not regard the question of homestead as having any bearing on this case, in the attitude in which it now stands in this court.

E. B. Smith and his wife, C. E. Smith, to secure Elliott and Deats, who were sureties on an injunction bond, with E. B. Smith as principal, from loss on that account, made to N. O. Green, as trustee, a deed of trust upon the tract of one hundred and sixty acres involved in this suit. Judgment was recovered against Smith and his sureties, and Deats and Elliott had the debt to pay.

Before the debt was paid, however, E. B. Smith died, insolvent.    More than a year after his death, Green proceeded to sell the land, in accordance with the terms of the deed of trust, and Elliott and Deats became the purchasers.    This is a suit by them against C. E. Smith, the widow, and Mayfield, her tenant, of trespass to try title.

The first question presented on the record is, is the deed of trust from Smith and wife to Green a valid instrument?    Does it, on its face, confer any authority on the trustee?    Is it properly executed?

The following is the form of the separate acknowledgment of Mrs. Smith, as certified to by the notary public taking the acknowledgment:

"And the said Catherine E. Smith, wife of the said E. B. Smith, having been examined by me, privily and apart from her said husband, and having the said deed fully explained to her, she, the said Catherine E. Smith, acknowledged the same to be her act and deed, and declared she had willingly sealed and delivered the same, and that she wished not to retract it," etc.

It will be observed that the certificate does not show that she *willingly signed* the instrument; nor is there in

the acknowledgment any equivalent word or expression. There is a clear omission of a material substantive part of the necessary acknowledgment to bind a married woman, whether the conveyance be of her separate property or of a homestead.

Article 1003, Pas. Dig., reads as follows: "That when a husband and his wife have signed and sealed any deed or other writing, purporting to be a conveyance of any estate or interest in any land, slave or slaves, or other effects, the separate property of the wife, or of the homestead of the family, or other property exempted by law from execution, if the wife appear before any judge of the Supreme or District Court, or notary public, and being privily examined by such officer, apart from her husband, shall declare that she did freely and willingly sign and seal the said writing, to be then shown and explained to her, and wishes not to retract it, and shall acknowledge the said deed or writing, so again shown to her, to be her act, thereupon such judge or notary shall certify such privy examination, acknowledgment and declaration, under his hand and seal, by a certificate annexed to said writing, to the following effect or substance, viz.:

"State of Texas, county of ————. Before me, ————, judge of, or notary public of ———— county, personally appeared ————, wife of ————, parties to a certain deed or writing, bearing date on the ———— day of ————, and hereto annexed, and having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said ————, acknowledged the same to be her act and deed, and declared that she had willingly signed, sealed and delivered the same, and that she wished not to retract it," etc.

It is evident that the legislative intent was to so hedge in the separate property of the wife and the home-

stead, that it would be impossible that she part with either, without her free, voluntary and uninfluenced action; that the whole transaction be voluntary, and every part of the transaction be so; and further, that she be cautioned by the officer, that she be by him fully advised of the contents and consequences of the transaction, and being so advised, that she then shall say that she did everything, that she *willingly signed*, sealed and delivered the same for the purposes and considerations expressed in the instrument, and that *then* she wished not to retract it. So intent was the Legislature on this subject, that a form was prescribed, so full, so carefully worded and specific, that it would be impossible for the party making the acknowledgment to be ignorant of her rights, or of the consequences of her acts, or that any part of her acts could possibly have been otherwise than voluntary.

It is true the very form of words laid down in the statute need not be followed, but no form that leaves out any substantive ingredient of the form laid down will be sufficient.

A *femme covert* cannot convey a title to her lands, nor a homestead, except by a deed executed upon her private examination, made *as the law directs;* her signature to a deed without such examination is a nullity. (Thompson v. Phelps, 6 Dana., 390; Perry v. Calhoun, 8 Humph., 556; Bern v. Randall, 23 Ala., 514; Berry v. Donley, 26 Texas, 744; Rice v. Peacock, decided at this term.)

If the property in controversy were the separate property of the wife, or the homestead of the family, in legal contemplation, under the foregoing reasoning and authorities, this case is decided. If it were neither the separate property of the wife nor the homestead, but simply community property, then the case would be determined by the rule laid down in the case of Robertson v. Paul, 16

Texas, 472—unless this court shall overrule that and other cases involving the same rule.    This we are not prepared to do.

It is insisted that the lien created by Smith by reason of the deed of trust secured a vested right, and that the power being coupled with an interest, is irrevocable ; and that, therefore, the construction of the statute in Robertson v. Paul if applied to this case is repugnant to the tenth section of the first article of the Constitution of the United States.

We answer, that the deed of trust in this case was executed long after the act of the Legislature upon which the rule is based became a law.    Not only so, but that statute had been construed, in that very case, long before this deed of trust was executed ; and it is well settled, that whenever a statute affects a contract, not only the statute itself, but the legal construction of the statute by the courts of the State, enter into and form a part of the contract.

He who takes a deed of trust from the husband and wife, takes it with the contingency, that should the husband die before the execution of the trust, his remedy, if any he has, must be sought in the probate court, and not through the separate action of the trustee.

That the laws which exist at the time and place of the making of a contract enter into and form a part of it, embracing alike those which affect its validity, its construction, its discharge, and its enforcement, forms a rule recognized by numerous authorities of the highest character. (The People v. Bond, 10 Cal., 570 ; Von Hoffman v. The City of Quincy, 4 Wallace, 550 ; Green v. Biddle, 8 Wheat., 92 ; McCracken v. Hayward, 2 Howard, 612 ; and Bronson v. Kinzie, 1 Howard, 319.)

In the case of Von Hoffman v. The City of Quincy, above cited, Mr. Justice Swayne says : " It is also settled

that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to, or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement. Illustrations of this proposition are found in the obligation of the debtor to pay interest, after the maturity of the debt, where the contract is silent—in the liability of a drawer of a protested bill to pay exchange and damages, and in the right of the drawer and endorser to require proof of demand and notice. These are as much incidents and conditions of the contract as if they rested upon the basis of a distinct agreement.

In the case of The City v. Lamson, 9 Wallace, 485, Justice Nelson says : "It is also urged that the Supreme Court of Wisconsin has held that the act of the Legislature conferring authority upon the city to lend its credit and issue the bonds in question was in violation of the provision of the constitution above referred to. But at the same time this loan was made and these bonds were issued, the decisions of the courts of the State favored the validity of the law. The last decision therefore cannot be followed."

In regard to this contract, at the time of the execution of it the statute in question itself was in force, and its validity had been adjudicated by this court distinctly in Robertson v. Paul. It follows, therefore, that in either case, whether the property involved in this case was the homestead of the family or the community property, not homestead of Smith and wife, the sale by the trustee, Green, to the appellees, was a nullity.

The judgment therefore is reversed, and the cause dismissed.

REVERSED AND DISMISSED.