## TEXAS AND PACIFIC RAILWAY COMPANY vs. MARY A. DURRETT et al.

SUPREME COURT, AUSTIN TERM, 1882.

*Practice—No power in husband to grant right of way over separate property of wife—Evidence.*—Where the question whether the property appropriated was

the community property of the husband and wife, or the separate property of the wife, was fairly submitted to the jury, and they find it the separate property of the wife, and there being evidence to sustain the finding, this court will only consider that part of the assignment of errors which refers to the property as separate estate.

The right of way attempted to be granted to the railroad in this case was something more than an easement, and as such carried with it an interest and estate in the separate property of the wife, which at no future time could be revoked· The power to make such conveyance exists only in the owner of the soil, and the statutes of this State have vested no such power in a husband in reference to lands the separate property of the wife.

The court did not err in permitting proof as to the understanding between Mrs. Durrett and her husband, at the time the land in controversy was deeded to her, that the same should be her separate property.

Appeal from Dallas county—Opinion by Stayton, J.—The question whether the land which was appropriated by the appellant for its road-bed and way was the separate property of Mrs. Durrett, or the community property of herself and husband, was fairly submitted to the jury by the charge of the court, and their finding involves a finding that the land over which the appellant constructed its road was the separate property of Mrs. Durrett; hence, it becomes necessary to consider so much of the assignments of error as are based upon the theory that the land was the community property of Mrs. Durrett and her husband.

The record exhibits proof amply sufficient to establish that the property was owned by Mrs. Durrett in her own separate right.

The appellants, after they had laid off their road across the land claimed by Mrs. Durrett, obtained from her husband by a writing which she never signed, and contrary to her wish, an instrument which, in terms, purported to convey to the appellant the right of way over the land, which, so far as necessary now to be considered, was as follows: "Know all men by these presents: That I, John Durrett, in consideration of the sum of one dollar, to me paid by the Texas and Pacific Railway Company, the receipt of which is hereby acknowledged, do hereby bargain, sell, grant and convey unto said company the right of way through and over (our present survey of my) land situated in said county, embracing fifty feet on each side of the track of said road, together with the use of the wood, timber, water, etc., pertaining to the land so granted and conveyed, to have and to hold the same for the uses and purposes aforesaid unto said company and its successors forever," etc.

It is claimed that under this agreement, made by the husband, the company acquired the rights which the husband undertook to convey thereby, even though the land was the separate property of his wife.

The statute in force at the time the agreement between the husband and the appellant was made provided, as do those now in force, that the husband and wife should join in the conveyance of real estate, the separate property of the wife (P. D., 1003; R. S., 559); and provide how the acknowledgment to an instrument to convey her separate estate must be made (P. D., 1003; R. S., 4310, 4313); and conveyances of such property not made in the manner prescribed by the statute are invalid. (Berry vs. Donley, 26 Texas, 737; Smith vs. Elliott, 39 Texas, 201; Fitzgerald vs. Turner, 43 Texas, 79.) So far have the rights of the wife been protected that it has been held that the husband has no power by his own act even to sell personal property which is the separate property of the wife. (Tucker vs. Carr, 39 Texas, 98; 5 Texas, 201; 8 Texas, 180.)

The conveyance from the husband to the company does not describe with certainty any particular land, but if we apply the description, " our present survey of my land situated in said county," to the land owned by Mrs. Durrett, then the inquiry arises, had the husband the power to make the conveyance which he did make ?

The grant attempted to be made by the husband, in terms, purports to convey a perpetual easement in the land (Junction Railroad Company vs. Ruggles, 7 Ohio State, 1), or a qualified determinable fee, liable only to be divested if the estate is used for purposes other than that contemplated by the conveyance. (State v. Brown, 3 Dutcher, 13.) Such a conveyance, if valid, is not revocable. (New Jersey Midland Railroad Company vs. Van Syckle, 8 Broom., 496.)

Such a right, as the conveyance by the husband purports to convey, if considered simply as an easement, is an interest in land which could only be created by deed or grant. Speaking of easements and the method of their creation, Mr. Washburn, in his work on Servitudes and Easements, says: " These, being interests in land, can only be acquired by grant, and ordinarily by deed, or what is deemed to be equivalent thereto, a parol license being insufficient for the purpose." (Washburn's Servitudes and Easements, 23, where the authorities bearing upon this subject are collated.)

The right attempted to be conveyed is, however, more than an easement, in the legal acceptation of that term; in addition to granting a mere easement, it attempts to give the right to take something out of and from the soil, which is known in the books as a *profit a prendre,* a right coupled with a profit. Referring to this subject in his work above referred to, p. 11, Mr. Washburn, commenting upon the case of Post vs. Pearsall, 22 Wendell, 425, says; "The distinction seems to be this: If the easement consists in a right of *profit a prendre,* such as taking soil, gravel, minerals and the like from another's land, it is so far of the character of an estate or interest in the land itself that if granted to one in gross it is treated as an estate, and may, therefore, be one for life or inheritance."

Such being the character of the conveyance under which the appellant claims, if valid, it carries with it an interest and estate in the separate property of the wife, which at no future time can be revoked, even after the power of the husband to control and manage her separate estate may cease by his death.

It attempts to give the right, not only for roadway, but also to use the wood, timber, water, soil, gravel or stone, which may be on the land covered by the deed, for such purpose, and at any place, and to such extent as to the appellant may seem proper, although such use may render the land utterly valueless to the wife. The power to make such conveyance exists alone in the owner of the soil, and the statutes of this State have vested no such power in a husband in reference to lands the separate property of the wife. The power of the husband over the separate estate of the wife is one of control and management, and not of alienation. "This invests him with such control and powers as are incident and necessary to the due exercise of his authority, but gives him no power over matters affecting her right or title to the property, or to perform any act by which such title may be endangered." (McKay vs. Treadwell, 8 Texas, 180.)

Hence, we are of the opinion that the husband had no power to make the conveyance relied upon by the appellant, and that the same interposes no obstacle to the recovery sought by Mrs. Durrett.

It is urged that, as the deed was made to Mrs. Durrett during coverture, the deed from the husband, in the absence of notice to

the appellant that the land was the separate property of the wife, must be effective.

The pleadings of the oppellant were not such as to raise the question whether it was a purchaser for a valuable consideration, without notice of the rights of Mrs. Durret; and the court did not err in sustaining exception to the fourth paragraph of the answer, for the only material averment there was in that part of the answer, was that the property was community property; the same averment was contained in the preceding paragraph of the answer, of which appellant had the benefit.

If, however, the answer had set up sufficiently the defense above indicated, it would have been unavailing, for upon the face of the deed it must be held to have been made by the husband, and without consideration, and the evidence does not show that the appellant, by the conveyance from the husband, was induced to build its road over the land, or that it was induced to do any other act thereby which it would not have done without such conveyance; but, upon the contrary, the evidence does show that the appellant had staked out its roadway, and that its agent declared to the wife the intention there to build the road before the conveyance of her husband was taken, at which time the wife informed the agent of her unwillingness to have the road there constructed. The foregoing applies to the appellant's tenth, eleventh and twelfth assignments of error, and the same need not further be considered.

It is claimed that the court erred in permitting appellee to prove, as an element of damage, the inconvenience of crossing over the appellant's road from one part of the tract of land to the other, which had been severed by the building of the road, because the same had not been especially alleged. This proposition cannot be sustained; for, under the general statements of the grounds of injury, the same being sufficiently specific under the general claim for damages, all things which were the natural results of the act made the basis for damages could properly be proved.

The court did not err in permitting proof as to the understanding between Mrs. Durrett and her husband, at the time the land in controversy was deeded to her, that the same should be her separate property (Higgins vs. Johnson, 20 Texas, 389); besides, the proof that the land was purchased with the separate means of the wife was full, and the appellants were not in a situation, as before said,

that would enable them to claim to be innocent purchasers for a valuable consideration.

It is claimed that the damages were excessive, and that the court erred in its charge to the jury upon the measure of damages.

The charge of the court is not perceived to be erroneous, and embodies the principles involved in the great current of authority, which now are made a part of the statute law of this State. (R. S., 4195, 4196.)

The evidence was conflicting, but there was evidence amply sufficient to sustain the verdict; at least it is not so clearly excessive as to authorize this court to set it aside. It is not necessary in this case to pass upon any other question raised by the assignments of error, for under the facts of the case they are immaterial.

The judgment of the district court is affirmed.

---

SINCE the dissenting opinion of Judge Hurt, in the case of Whitworth vs. The State, contained in this number was put in type, the case of Huntsman vs. The State has been decided by the Court of Appeals. The indictment was, like that of Whitworth, for theft, containing the usual allegations, and the conviction was for embezzlement. The court adopted the dissenting opinion of Judge Hurt in Whitworth's case as its opinion in Huntsman's case, overruling Whitworth vs. The State, 11 Court of Appeals. This dissenting opinion of Judge Hurt stamps him as one of the leading legal minds of the State, and proves him worthy of any further judicial preferment to which he may aspire.

---

JUDGE SAM A. WILLSON, during the short time that he has occupied a seat on the bench of the Court of Appeals, by his able and exhaustive opinions and untiring labor, has demonstated forcibly the wisdom of the selection made in placing him there. While he has, from the press of business before that court, neither had the time nor the opportunity for deliberation, yet we do not hesitate to say in our judgment his opinions are equal to any, in force and clearness, ever delivered by that able bench.

---

THE Attorney-General is engaged in sending to the district and county attorneys throughout the State copies of the opinions of the Court of Appeals, in the several cases involving the insufficiency of the so-called "Common sense indictment bill."