WILEY WILLIAMS v. J. C. ROGAN ET AL.

(Case No. 4360.)

1. CONTRACT — SUBSCRIPTION.— A subscription made by the inhabitants of a county to assist in the erection of buildings for a high school, on a proposition made by the district conference of the Methodist church, to establish such a school on a designated sum being contributed by such inhabitants, creates an obligation to pay, binding on each subscriber to the extent of his subscription, when the subscription is accepted. The obligation was then binding on each party — on one to pay, on the other to build.

2. SAME.— Until the acceptance by the church of the subscription, or the beginning of work on the building, the subscriber may withdraw his promise to pay the amount subscribed by him, but he cannot afterwards. Hopkins v. Upshur, 20 Tex., 93; Doyle v. Glasscock, 24 Tex., 200, and Rose v. R. R. Co., 31 Tex., 58, approved.

3. SAME.— He who fails to pay his subscription under such circumstances cannot avoid his obligation by showing the laches of the church to erect the building, if by his failure to meet his obligation he contributed to that delay.

APPEAL from San Saba. Tried below before R. H. Ward, Esq., special judge.

*Geo. F. Pendexter* and *W. M. Allison*, for appellant, cited on the right of appellant to withdraw his subscription, Pars. on Cont., vol. 1, pp. 452–4 (5th ed.). On laches in building, 27 Tex., 113.

*Carleton & Morris*, for appellees.

STAYTON, ASSOCIATE JUSTICE.— In 1879, the district conference of the Methodist Episcopal Church South, in which district was situated the county of San Saba, proposed to the inhabitants of six competing counties, of which San Saba county was one, to establish a high school in such one of the competing counties as would contribute the sum of $5,000 to assist in erecting houses, etc., for such school.

In the month of June of that year, a subscription was raised in San Saba county for that purpose, to which the appellant subscribed the sum of $200, to be paid in four equal instalments, the first to be paid on or before the 1st September, 1879, the next January 1, 1880, another May 1, 1880, and the last on September 1, 1880.

The payments were to be made, under the terms of the subscription, to such persons as the conference might appoint to receive it.

The requisite sum was subscribed, and on the 19th day of July, 1879, the conference accepted the subscription, and agreed to locate the school and build the necessary house at the town of San Saba, in accordance with the terms of the subscription. Trustees to re-

ceive the money and conduct the business were appointed by the conference, and it is not questioned that the appellees are the trustees so appointed or their successors.   On the 10th of September, 1879, the trustees met and made a small expenditure for stationery and other purposes.

Another meeting of the trustees was had on the 20th of that month, for the purpose of determining, by the vote of the subscribers, at which of two competing points in the town of San Saba the school house should be erected, and at that meeting the appellant, by an authorized proxy, voted.   The building of the house, for some reason not fully explained in the record, was postponed, and the building was not actually commenced until some time in the year 1881, but it was subsequently completed.

Some time in the fall or winter of 1879, but after the proposition of the subscribers had been accepted by the conference, and the place for the erection of the house had been agreed upon and a small expenditure of money made, the appellant made known to the trustees his determination not to comply with his subscription, and he now claims that he was thereby released from all obligation to pay it.

This is not the ordinary case of a subscription to some charitable or public purpose in which there are no contracting parties except the subscribers; but the subscribers are the parties upon the one side, and the district conference the party upon the other.

Upon the acceptance of the proposition of the conference, the subscribers became bound, as did the conference upon its acceptance of the subscription and agreement, to build in accordance with the terms of the subscription.   There was, then, a mutuality of engagement, so that each party had the right to hold the other to a binding agreement, and it became so previous to or even without performance, and either party might enforce it.

The rule is thus laid down by Mr. Parsons:   " The party making the promise is bound to nothing until the promisee, within a reasonable time, engages to do, or else does or begins to do, the thing which is the condition of the first promise.   Until such engagement or such doing, the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it.   But after an engagement upon the part of the promisee which is sufficient to bind him, then the promisor is bound also, because there is now a promise for a promise, with entire mutuality of obligation."
1 Parsons on Contracts, § 450.

The parties have concurred in expressing the common intention,

and this with a view that such expression should determine their respective rights and duties; and this, in legal contemplation, constitutes an agreement which, if supported by a sufficient consideration, makes a legal and binding contract.

The several stages and essentials of contract are perhaps nowhere more clearly expressed than in the interpretation clause of the Indian contract act of 1872, which will be found in Pollock's Principles of Contracts, 7, as follows:

"(a) When one person signifies to another his willingness to do or to abstain from doing anything, with a view to obtaining the assent of that other to such act or abstinence, he is said to make a proposal.

"(b) When the person to whom the proposal is made signifies his assent thereto, the proposal is said to be accepted. A proposal when accepted becomes a promise.

"(c) The person making the proposal is called the 'promisor;' the person accepting the proposal is called the 'promisee.'

"(d) When, at the desire of the promisor, the promisee, or any other person, has done or abstains from doing, or does or abstains from doing, or promises to do or to abstain from doing, something, such act or abstinence or promise is called a consideration for the promise.

"(e) Every promise, and every set of promises forming the consideration for each other, is an agreement."

In the case before us we have the double proposals, the double acceptances, the mutual promises, and the thing promised to be done upon the one side actually completed; this gives the right to enforce performance from the other.

In the case before us there was no revocation of the promise made by the appellant until his proposition had been accepted by the conference, and even after that time, by participating in the selection of a place for the location of the house, he emphasized his intention to be bound. All of this occurred after the trustees, to whom, by the terms of the subscription, the same were to be paid, had been appointed, and they had accepted the position.

Among the cases which hold such contracts binding are the following: Hopkins v. Upshur, 20 Tex., 93; Doyle v. Glasscock, 24 Tex., 201; Rose v. Railroad Company, 31 Tex., 58; McMillan v. Railroad Co., 15 B. Monroe, 233; Comstock v. Howd, 15 Mich., 242; Watkins v. Eames, 9 Cushing, 539.

The case of Cottage Street Church v. Kendall, 121 Mass., 529, is referred to in elementary works as an authority to the contrary, but

the facts upon which the opinion is based do not justify the construction placed upon the opinion, in which Gray, C. J., uses the following language: "In every case in which this court has sustained an action upon a promise of this description, the promisee's acceptance of the defendant's promise was shown, either by express vote or contract, assuming a liability or obligation, legal or equiable."

Whether the mutual promises of the subscribers would be a sufficient consideration need not be examined, for this case rests upon contract between the district conference and the subscribers, in which the latter were the judges as to whether the benefit to result to them by the establishment of the school in the place justified their several subscriptions.

It is further claimed that the appellant was released by the failure to build the house promptly. The agreement was that the "school should be put in operation as soon as possible *after the collection* of the necessary funds for said purpose." The buildings were not to cost less than $5,000, and the subscription amounted to but little over that sum, but the house cost more.

The very object, as evidenced by the subscriptive agreement, was to raise the sum requisite to do the work; and as that was made payable in instalments, it is probable that none of the parties contemplated that the work should be commenced at once. Such was not the agreement of the parties; and the appellant could not well be heard to say that, by his own failure, at least in part, to pay the instalments on his subscription as he had agreed to do, he could place the other party in default, in not doing what they had agreed to do so soon as it could be done after he and others had complied with their agreements.

The payments were not conditioned upon the completion of the work in a given time, but it must have been understood by all parties that the work was to be done when the subscriptions were paid.

At most, it would be a question of fact, under all of the circumstances of this case, whether the delay in erecting the house and establishing the school was an unreasonable one, or even a longer delay than was contemplated by the parties at the time the subscription was made.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered May 18, 1883.]