## I. HEIDENHEIMER v. CLEVELAND & CAMERON.

### No. 1269.

**1.  Sale—Action for Contract Price—Market Value.**

Where defendant refused to accept goods purchased by contract, and plaintiff sued for the contract price, less the net proceeds of a resale of the goods, evidence offered by plaintiff of the market value of the goods at the contract time and place of delivery was properly rejected, his action not being for damages for a repudiation or breach of the contract, and his petition not having alleged the value of the goods at such time and place of delivery.

**2.  Contract of Sale—Seller's Non-performance Excused by Acts of Buyer.**

Where a contract of sale gives the buyer the right to fix the date when the goods should be shipped, and he fixes a certain day, notifying the seller that unless shipment is made by that day he will not receive the goods, but by his own acts and misconduct puts it out of the seller's power to ship on the day designated, the seller has the right to ship on the following day, and upon the buyer's refusal to take the goods, he can recover the difference between the contract price and the net proceeds of their resale.

APPEAL from McLennan.  Tried below before Hon. L. W. GOODRICH.

*Jones, Kendall & Sleeper, M. C. McLemore, Jr.,* and *Robt. G. Street,* for appellant.

*L. C. Alexander,* for appellees.

KEY, ASSOCIATE JUSTICE.—This is the second appeal in this case. Heidenheimer v. Cleveland, 17 S. W. Rep., 524.   The basis of the suit is a written contract, which reads as follows:

"STATE OF TEXAS, }
"County of McLennan. }

"Know all men by these presents, that I, Isaac Heidenheimer, of Gal-

veston, Galveston County, Texas, for and in consideration of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, have this day sold to Messrs. Cleveland & Cameron of Waco, McLennan County, Texas, (200,000 ℔s.) two hundred thousand pounds of Fowler Bros.' make and packing of short, clear smoked bacon sides, packed in their regular style of packing, same to be sound, sweet, merchantable bacon of the kind named, Cleveland & Cameron to pay for same on receipt of bill of lading and invoice. The price to be ten dollars and eighty-five cents per hundred pounds (or 10 85-100 per pound), said meat to be delivered to Cleveland & Cameron's order at any time during the month of August, 1883, they paying the freight on same from Kansas City, Missouri. This contract is made on a basis of ten and 10-100 dollars per hundred pounds or 10 1-10 per pound, which means that in the event the price of the kind of bacon herein named exceeds the sum of 10 1-10, then in that event Isaac Heidenheimer pays Cleveland & Cameron the sum of such excess, based on the quantity of (200,000) two hundred thousand pounds, and said Cleveland & Cameron are authorized to make their sight draft on said Heidenheimer for such excess; and should the price shrink or decline below the basis rate of 10 1-10, then under such circumstances Isaac Heidenheimer can draw on said Cleveland & Cameron for such decline below the price of 10 1-10, and on the quantity as herein named.

"ISAAC HEIDENHEIMER.<br>"CLEVELAND & CAMERON.

"Waco, February 1, 1883.
"Witness: J. Harris, C. H. Jones."

The plaintiff alleges in his petition that he complied with the terms of the contract; that the defendants refused to receive and pay for the bacon when tendered; that, after such refusal, he re-sold the bacon for the best price obtainable, and, after deducting freight and other necessary charges, he gave defendants credit for the residue, leaving a balance of $8356 due on the contract price; for which amount, and interest he brought this suit.

The defendants pleaded the general issue; averred that the contract sued on was a gambling contract and void; that they had ordered the bacon shipped not later than the 21st day of August, 1883, and had notified the plaintiff that it would not be received if shipped after that date.

The plaintiff in reply to defendants' answer alleged that the bacon was placed on board the cars at Kansas City on the 21st day of August, 1883, and would have been shipped on that day, but for certain fraudulent acts of the defendants, and that it was shipped on the next succeeding day.

After hearing all the evidence ruled to be admissible, the District Court instructed the jury to return a verdict for the defendants, which was done, and from a judgment rendered thereon, the plaintiff has appealed.

On the former appeal it was held by the Supreme Court that it did not appear from the face of the contract that the purpose was to deal in "futures" without any actual delivery of the bacon being contemplated by the parties; that some of its terms were ambiguous; and that its meaning in that respect was a question to be decided in the light of the circumstances under which it was made and the subsequent conduct of the parties in reference thereto. That decision is now part of the law of the case.

In his pleadings appellant rested his case on his right to recover the contract price of the bacon, less the net proceeds of its re-sale, and we therefore hold that no error was committed in not allowing him to prove its market value in Kansas City on the 21st day of August, 1883. His action was not for damages, for a repudiation or breach of the contract, but to recover the purchase money (less admitted credits) of the bacon, and he did not allege in his petition the value of the bacon in Kansas City on the 21st day of August, 1883.

There was testimony tending to show that after the making of the contract the parties to it interpreted it as contemplating and requiring actual delivery of the bacon, and it was shown by appellant that on the 18th day of August, 1883, appellees sent him the following telegraphic message:

"Waco, Texas, August 18, 1883.
"To I. Heidenheimer, Galveston, Texas:

"We are prepared to receive delivery of bacon under our contract of February 1, 1883. Ship the same to us at Waco not later than Tuesday, August the 21st, which date we now designate for delivery. If not shipped by that date we cannot accept delivery.

(Signed)     "CLEVELAND & CAMERON."

Said message was received by appellant on the night of the day it was sent; and on the first train going out, which was the following morning, he started to Kansas City, which point he reached on the morning of August 21st. According to Heidenheimer's testimony, he immediately bought from Fowler Bros. the bacon necessary to fill the contract sued on, and directed them to ship it to Waco; it was loaded on the cars on that day, August 21, 1883, but Fowler Bros. would not give him a bill of lading on that day, and said they could not ship it that day, because they had made an agreement with Mr. Cleveland not to ship out any bacon to Waco on that date.

The testimony of the witness Stobo, who was manager of Fowler Brothers' business in Kansas City, tends to corroborate Heidenheimer's evidence, and shows, there being no testimony to the contrary, that G. W. Cleveland, one of the appellees, came to Kansas City about August 18, 1883, and made a contract with him, as manager for Fowler Bros., by which said firm agreed not to ship any bacon of the kind called for in the contract between Heidenheimer and Cleveland & Cameron, to Waco, Texas, until the following Wednesday, which was the 22nd day of the month. He stated that after making said contract with him, Cleve-

land told him of his contract with Heidenheimer, and that he had made the contract with the witness to prevent Heidenheimer from being able to deliver the meat. Stobo also stated that the bacon purchased from Fowler Bros. by Heidenheimer was not shipped until the 22nd day of August, 1883, on account of his agreement with Cleveland not to ship such bacon to Waco, Texas, until the latter date. The evidence of the witness Jones was corroborative of that given by Stobo.

The court below excluded other evidence offered by Heidenheimer in support of other averments in his petition, sustaining the following objection thereto, and holding as stated in the objection: "That the evidence was immaterial and irrelevant, and because it appeared from the uncontroverted evidence of plaintiff and that introduced by him that the contract was repudiated by Cleveland & Cameron, unless shipment was made on the 21st, they having notified plaintiff that the bacon would not be accepted unless it was shipped on the 21st. That the measure of plaintiff's damage was the difference between the market price of such bacon at Kansas City on August 21st and the contract price, and that plaintiff had no right after the 21st, notwithstanding the alleged action of Cleveland in preventing shipment, to ship the bacon, sell it and subject the defendants to additional charges, as he sought to do by his pleadings and this evidence."

This holding is assigned as error, and presents the principal question involved in this appeal. To this question we have devoted considerable time and attention, and our conclusion is that the court erred in the ruling referred to.

If, as contended by appellees, they had the right to fix the day in August, 1883, for the delivery of the meat, the mere exercise of that right did not have the effect of repudiating the contract. Nor did the statement in their telegram: "If not shipped by that date, we cannot accept delivery," operate as an immediate renunciation of the contract. On that subject it was conditional, and carried with it the implication that if the meat was shipped on or before the 21st, appellees would abide the contract and pay for it as therein stipulated. Heidenheimer had no right upon receiving it to regard it as a repudiation of the contract, and it became his duty to endeavor to comply with its requirements. If it had been an unqualified repudiation of the contract, there might be reason for holding that an action for damages was the only remedy; though we make no ruling here on that question.

Giving to the telegram all the effect that appellees are entitled to claim for it, it amounted to no more than if the contract had stipulated that the bacon was to be shipped from Kansas City on the 21st day of August, 1883, and not thereafter, and if shipped after that date appellees would not receive it. And, if such had been the terms of the contract, and appellees had prevented appellant from shipping it on that day, and appellant had shipped it the next day, he would be held to have complied with his contract. The law would not permit Cleveland & Cameron to charge Heidenheimer with a breach of the contract, in

failing to ship on the 21st, when such failure was attributable alone to their misconduct. In other words, having prevented the shipment on the 21st, they will, in law, be deemed to have consented that it be made on the 22nd. 2 Benj. on Sales, sec. 859, note 6; Cape Fear Navigation Co. v. Wilcox, 78 Am. Dec. 269; Ketchum v. Zeilsdorff, 26 Wis., 514; Tone v. Doelger, 6 Rob. (N. Y.), 256; United States v. Peck, 102 U. S. 64; Fleming v. Gilbert, 3 Johns., 527.

And the same rule, it seems to us, should apply to a conditional repudiation. Admitting appellees' right to fix the date of shipment and declare in advance a repudiation of the contract, unless the shipment be made at that time, still, the exercise of that right was accompanied by an implied obligation on their part not to prevent performance by appellant; and if they disregarded that obligation, and prevented the shipment at the time designated by them, they must be held to have consented to its postponement to the next day, which consent operated as a waiver of their conditional repudiation.

There being no absolute refusal to accept delivery until after the meat was shipped, appellant had the right, if the contract was valid, after such refusal, to re-sell it, and credit appellees with the net proceeds and hold them liable for the residue of the contract price. Tiedeman on Sales, sec. 334; Waples v. Overaker, 77 Texas, 7.

On account of the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 20, 1895.