## STANLEY v. SUMRELL.

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1914. Rehearing Denied Feb. 21, 1914.)

1. SALES (§ 335*)—REMEDIES OF SELLER—RESALE.

Where, upon refusal of a landlord to purchase a tenant's share of a crop of corn and pay the market price, as he had agreed to do, the tenant sold the corn elsewhere, the tenant was bound, whether he sold the corn as agent of the landlord or as a seller whose vendee had refused to complete the sale, to make the sale fairly and for the best price reasonably obtainable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 921; Dec. Dig. § 335.*]

2. PLEADING (§ 21*) — REPUGNANT ALLEGATIONS—"MARKET VALUE."

Where a petition alleged that plaintiff sold property at the best price obtainable for $425, and that the market value at the time of the sale was $870, and prayed for the difference as damages, the allegations were repugnant, since market value means the best price obtainable by reasonable efforts.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 44; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 5, pp. 4383–4388; vol. 8, p. 7717.]

3. CONTRACTS (§ 171*)—CONSTRUCTION—ENTIRE OR SEVERABLE CONTRACTS.

Where a lease of land for farm purposes was in the ordinary form, except that in addition the landlord agreed to purchase the tenant's share of corn raised, and the parties performed all the conditions except as to the purchase of the corn, the contract was severable, and the stipulation as to the purchase of corn was not dependent upon the lease proper.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 754–757; Dec. Dig. § 171.*]

4. CONTRACTS (§ 9*)—REQUISITES AND VALIDITY—CERTAINTY AS TO SUBJECT-MATTER.

A contract by which a landlord agreed to purchase all the tenant's kaffir corn except the amount the tenant wished to feed his teams, was rendered certain as to the subject-matter when the tenant tendered to the landlord a definite amount of the corn.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 10–20; Dec. Dig. § 9.*]

5. CONTRACTS (§ 10*)—REQUISITES AND VALIDITY—MUTUALITY OF OBLIGATIONS.

Where a landlord agreed to purchase all the tenant's kaffir corn except the amount the tenant wished to feed his teams, any want of mutuality was eliminated by the tender by tenant of a definite amount before repudiation by the landlord.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

6. SALES (§ 333*)—REMEDIES OF SELLER—PLACE AND TIME OF SALE—NOTICE.

Where a landlord refused to comply with his contract to purchase his tenant's share of corn, and refused to accept it when tendered by the tenant, no notice of the time and place of a resale by the tenant was necessary.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 919; Dec. Dig. § 333.*]

7. EVIDENCE (§§ 113, 323*) — SIMILAR FACTS AND TRANSACTIONS—MARKET VALUE.

Testimony as to what plaintiff and other witnesses similarly situated would take for their property was inadmissible upon the issue of market value, as was also evidence of an unaccepted offer for the property.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296, 1214–1217; Dec. Dig. §§ 113, 323.*]

Appeal from Wheeler County Court; L. D. Miller, Special Judge.

Action by C. F. Sumrell against J. E. Stanley. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

J. B. Reynolds, of Wheeler, for appellant. N. P. Willis, of Canadian, for appellee.

HALL, J. November 13, 1911, appellant Stanley leased to appellee a certain farm in Wheeler county, and, among other stipulations in the written contract of lease, is the following: "Party of the first part [appellant] agrees to buy of party of the second part [appellee] all his kaffir corn at market value at the farm, excepting the amount second party wishes to feed his teams." The lease contract, in addition to the one quoted, contains the usual terms, and it is not necessary to state them further. On November 30, 1912, appellee sued the appellant in the county court of Wheeler county, alleging the execution of the lease contract, its expiration on December 31, 1912; that it bound him to plant and cultivate 140 acres of the land leased to kaffir corn; that the defendant specially agreed that he would purchase all of such kaffir corn, except the amount plaintiff wished to feed his teams at market value at the farm; that plaintiff's portion of the kaffir corn so grown upon said land became and was 96⅔ acres, upon which there was matured an average of three tons of kaffir corn to the acre, and which became

marketable on or about the 15th of November, 1912; that on said date plaintiff offered the said corn to the defendant at market price thereof upon said farm, which he alleges was $3 per ton, or the sum of $9 per acre, aggregating $870; that thereupon defendant refused to purchase the same, saying that he needed no kaffir corn, and that he was willing to pay only $384 therefor, and instructed plaintiff as to the disposition of the corn, to the effect that if plaintiff could find any person within 10 days who would pay more than $384 for said corn, plaintiff should sell said kaffir corn within 10 days to said person. Plaintiff further says that at said time it was known to defendant that plaintiff had worked an entire farm year upon the crops, and that plaintiff's share of the kaffir corn represented the bulk of plaintiff's compensation for a year's work, and that plaintiff had contracted debts in and around the town of Wheeler near said farm; expecting to pay said debts from the proceeds of the sale of said kaffir corn, and that said debts were due, and that it was necessary for plaintiff to make immediate disposition of said corn to pay said debts, on account of which plaintiff was obliged to sell, and did sell, the same for the sum of $425, which was the best price obtainable at said time, though less than the market value of said corn, because the market value thereof at the time of said sale was $870, on account of which plaintiff lost the difference, amounting to $445, which he alleges to be the amount of his loss and damage, and that said sum constitutes special damage, of which defendant had notice, in that plaintiff was obliged to make immediate sale of said kaffir corn, and at a sacrifice, to pay his debts, as defendant further instructed him to do, and, further, because, as was shown to defendant, said kaffir corn must be speedily sold for the reason it would soon be destroyed and eaten up by wild ducks, in the condition and place in which it was at said time. Plaintiff further proceeds to allege facts under which he claims a lien upon the appellant's share of the kaffir for the payment of his damages. By trial amendment plaintiff alleges that defendant gave him instructions to sell the kaffir corn within 10 days for more than $384, and that plaintiff accepted the defendant's instructions in such respect, and undertook to carry them out, to sell said corn for defendant's account as defendant's agent, of all of which defendant had due notice.

Appellant's answer consisted of a general exception, special exceptions to that part of plaintiff's petition in which it is alleged that defendant instructed plaintiff to sell the corn to any person whom he could find who would pay more than $384, because the allegation is vague, indefinite, and uncertain and does not undertake to give what were the supposed instructions, but simply states the construction placed upon the instructions by plaintiff, and because the allegation leaves it uncertain whether the instructions were intended to empower the plaintiff to make such sale as the agent of defendant, or merely waived his right to purchase at the price offered, and consented that plaintiff might do better if he could. Exception was further urged to that part of the petition seeking special damages because it attempts to hold the defendant liable for loss occasioned by his sacrifice of the corn, without showing an excuse for such supposed sacrifice, except the stress of financial circumstances of the plaintiff, which would constitute no justification for sacrificing the property, and afford no grounds for special damages, and because it was not alleged that the defendant was notified by plaintiff that he was holding the corn as the agent of the defendant and was selling it for his account. There was a further special exception upon the ground that the contract shows upon its face to be without consideration, and that it lacked mutuality of obligation, in that defendant promised to buy such corn as plaintiff did not wish to feed to his teams, leaving it altogether with plaintiff as to how much defendant was to take, if any at all, of the corn, and was therefore not enforceable, and was void. All of the defendant's exceptions were overruled by the court. The court charged the jury that the measure of plaintiff's damages would be the difference between the contract price of the kaffir corn and the price at which plaintiff subsequently resold the same, provided they believed that plaintiff exercised reasonable care and diligence in reselling it, and further charged that before they could find for plaintiff they must find, by a preponderance of the evidence, that the plaintiff elected to resell the kaffir corn, and that defendant had due notice thereof, and that plaintiff exercised reasonable diligence to resell the same within a reasonable time, and at the best price he could reasonably obtain. There was a verdict and judgment for the plaintiff in the sum of $445.

[1, 2] The first assignment is that the court erred in overruling the defendant's general exception to the plaintiff's petition. It is alleged, as shown above, that plaintiff sold the corn because he was obliged to do so to meet his financial obligations, and because the wild ducks were destroying it. Whether he sold it as the agent of the defendant at the defendant's request or as the seller, whose vendee had refused to complete the sale, the duty rested upon him, in either event, to make the sale fairly, and for the best price reasonably obtainable. If he sacrificed the property, as alleged, in order to meet obligations of his own for the existence of which the defendant was in no way responsible, he could not charge appellant with the difference between the contract price and the price obtained by him under this sale at a sacrifice. We think if the value of the kaffir corn deteriorated by reason of the depredations of the wild ducks, or from any

other cause for which appellee was not responsible, between the time the appellant refused to accept the corn and the date of the sale, appellant could have been made to bear such loss, and this fact was no excuse for the sale at a sacrifice. It will be observed that the plaintiff alleges that when appellant refused to accept the corn he instructed plaintiff to sell it to any one whom he could find within 10 days who would pay more for it than $384 (this being the amount of appellant's offer). It is further alleged that the sale for the sum of $425 was at a sacrifice, but that it was for the best price obtainable, and the petition also alleges that the market value of the corn at the time of the sale was $870. "'Market value' is defined to be the price which the property will bring in a fair market after fair and reasonable efforts have been made to find a purchaser who will give the highest price for it." 5 Words & Phrases, 4383; Winnipiseogee Lake Cotton & Woolen Mfg. Co. v. Town of Gilford, 67 N. H. 514, 35 Atl. 945. Our Courts of Civil Appeals have defined the term in the same way. Souther v. Hunt, 141 S. W. 359; Burr's Ferry Railway v. Allen, 149 S. W. 358; M., K. & T. Ry. v. Murray, 150 S. W. 217. Market value, as alleged in the petition, implies the existence of a market in which the price alleged was obtainable after fair and reasonable effort to that end. The allegation· that the market price was $870, and the statement in the same count that $425 was the best price obtainable, and the further statement that the sale was made at a sacrifice, are repugnant and inconsistent. Applying the rule that equivocal expressions in pleading are to be construed against the party using them, to the plaintiff's petition, we think the appellant's exception should have been sustained. Barry v. Screwmen's Benevolent Ass'n, 67 Tex. 250, 3 S. W. 261; Rowe v. Horton, 65 Tex. 89.

[3] Since the failure of the court to sustain the general exception and the special exception urged to the allegations above set out will require a reversal of the judgment, it is proper that we should discuss briefly such remaining assignments as may be pertinent upon another trial. We think the contract was severable, and the stipulation with reference to the sale of the kaffir corn was not, as shown by the contract itself, dependent upon that portion constituting the lease proper. Smith v. Crosby, 47 Tex. 128. "A contract is entire when its terms, nature, and purposes show that it is contemplated and intended that each and all of its parts, material provisions, and consideration are common each to the other and interdependent. A divisible contract is one which from its nature and purposes is susceptible of division and apportionment, and has two or more parts in respect to matters and things embraced by it, and not necessarily dependent on each other, and the parties do not intend that they shall be. The fact that the contract is embraced in one instrument does not make it entire and indivisible. Whether or not the contract is entire or divisible depends on the intention of the parties. ·The intention is to be ascertained from the language used, the subject-matter of the contract, and from a consideration of all the circumstances." 2 Elliott on Contracts, § 1543. On this question the record seems to disclose that all the conditions of the contract, save the one relating to the sale of the corn, have been performed by the parties respectively, and such performance accepted. If we are to decide that question in the light of their acts, then they intended to make·a severable contract. It is the rule that the acts of the parties under a contract are generally convincing, if not conclusive, of what they understood the contract to mean, and are explanatory of what their intent was in making it. Hagelstein v. Woods, 127 S. W. 854.

[4, 5] Nor was there such a want of certainty in the description of the subject-matter of the sale as rendered it void. The case of Crosby v. De Bord, 155 S. W. 647, construes a contract almost identical with the one in question and its validity was upheld. Under the clause of the contract in question it is true that Sumrell had the right to retain as much of the kaffir corn as he desired with which to feed his teams, and appellant may have had the right to repudiate the contract in that particular prior to the time the appellee made an offer of a specific amount of feed, but not afterwards. The question of uncertainty, and we think also the question of mutuality, were fixed and determined by appellee's offer of a definite amount before repudiation by appellant. "An offer leaving certain matters to the determination of one party or the other is definite enough. * * * An offer to buy all the coal used for certain years at a price established for certain grades, though the purchaser has the right to select the grades to be furnished," is sufficiently certain. 1 Page on Contracts, § 27. "If from the contract the court can determine the terms and conditions thereof and can determine the measure of damages in case of breach, the contract is sufficiently definite. The surrounding facts can be looked to to determine whether the offer is sufficiently definite. Thus an offer to pay one-third of the money received from all the privileges on fair grounds; an offer to sell goods to be resold for cash, the money thus received, less certain specified expenses to be turned over to the original vendor, out of which money the goods bought are to be paid for; an offer to sell a certain number of scales to be selected out·of several different kinds which were sold at different prices; an offer to allow the buyer of corporate stock to retain out of the purchase price an amount equal to the unpaid debt of the corporation; an offer to sell a certain fraction of the total amount of the

capital stock to be thereafter issued in a corporation to be formed; an offer not to compete in the practice of medicine, nothing being said as to time, and not to compete in business while the purchaser of the good will is engaged in it; an offer to A. in consideration of his assisting to make a success of a wholesale cigar business—are sufficiently definite. So an offer to furnish goods for an electric light plant so long as the gas well holds out is definite enough, though the owner of the well can sell and use gas for other purposes." 1 Page on Contracts, § 28.

In the description of property covered by chattel mortgages, where, as to the rule as to definiteness of description of contracts of sale, it has been held in this state that a description in a chattel mortgage which will enable third persons to identify the property, aided by inquiries which the mortgage indicates, is sufficient, and that written descriptions in such instruments are to be interpreted in the light of facts known to and in the minds of the parties at the time (Harless v. Jester, 97 S. W. 138; Ft. Worth Nat'l Bank v. Red River Nat'l Bank, 84 Tex. 369, 19 S. W. 517); and the doctrine is further declared in this state that a lien· created upon certain property included in a greater amount is not void for uncertainty, as it confers on the mortgagee a right to select from the mass such property as shall be deemed included in the mortgage (Oxsheer v. Watt, 91 Tex. 124, 41 S. W. 466, 66 Am. St. Rep. 863).

If we construe the contract in question under these decisions, then Sumrell had the right to select a sufficient amount of feed for his teams, shown to consist at that time of eight animals. On the issue of mutuality, it has been held that where A. was to have one-half the oil which might be located on B.'s land by A.'s drilling, but A. was not bound by the contract to drill, his drilling in pursuance of B.'s promise is the consideration making a contract which equity will enforce specifically. Boyd v. Brown, 47 W. Va. 238, 34 S. E. 907; Spires v. Urbahn, 124 Cal. 110, 56 Pac. 794. "If the party to whom the election is given has elected to perform, and has performed, the want of mutuality is thereby eliminated." 3 Page on Contracts, § 1619; Rose v. S. A., etc., Ry., 31 Tex. 49; Williams v. Rogan, 59 Tex. 438. It is held in Ben C. Jones & Co. v. Gammel-Statesman Pub. Co., 100 Tex. 320, 99 S. W. 701, 8 L. R. A. (N. S.) 1197, that a contract of like kind implied a duty resting on the part of appellee to select the amount required by him. When Sumrell offered to appellant the corn raised on 96⅔ acres, it was tantamount to a segregation of the feed which he was entitled to hold under the contract, and related back, eliminating the question of mutuality, making the contract good from the beginning. Taber v. Dallas County, 101 Tex. 241, 106 S. W. 332.

[6, 7] If appellee positively refused to accept the corn (Heidenheimer v. Cleveland & Cameron, 11 Tex. Civ. App. 546, 32 S. W. 826), or if appellant told appellee to sell to a third party, then it seems no notice of the time and place of the sale by Sumrell was required (Waples v. Overaker, 77 Tex. 7, 13 S. W. 527, 19 Am. St. Rep. 727). There is some improper testimony in the record upon the question of market value. Testimony as to what plaintiff and other witnesses with property similarly situated would take for their property was inadmissible (E. T. Ry. v. Scurlock, 97 Tex. 305, 78 S. W. 490), and evidence of an unaccepted offer for the corn in question or other corn, was also inadmissible on the question of its market value (T. & P. Ry. Co. v. Randle, 18 Tex. Civ. App. 348, 44 S. W. 603). Testimony as to the price at which the owners of other corn had offered it for sale was also incompetent. Sullivan v. M., K. & T. Ry. Co., 29 Tex. Civ. App. 429, 68 S. W. 745.

The questions raised by the other assignments, and which have not been disposed of by what has been previously said, will either not arise on another trial, or are unimportant, and will not be considered.

The judgment is reversed, and the cause remanded.