19463. ABERCROMBIE *v.* GEORGIA DISTRIBUTING COMPANY.

*Astor Merritt,* for plaintiff in error.   *J. R. Hutcheson,* contra.

BLOODWORTH, J.   The Georgia Distributing Company brought suit against W. C. Abercrombie, alleging in part "that on September 18, 1926, said defendant made a contract in writing with plaintiff whereby he agreed to purchase and did purchase 15 tons of cottonseed meal at and for the price of $28.00 per ton," and that "on September 21, 1926, said defendant made a contract in writing with plaintiff whereby he agreed to purchase and did purchase thereby 15 tons of sack and three loads of bulk cottonseed hulls;" that the goods were "to be ordered out by defendant by late September, 1926," and that the hulls were to be shipped, one car each, September 30, October 10, and October 20.   Each contract provided that the goods were to be delivered at Douglasville, "terms S/D, B/L attached, free of exchange to buyer, under the rules of the Interstate Cottonseed Crushers Association."   The defendant failed to order out the bulk hulls and the cottonseed meal purchased within the contract time.   The rules of the said Interstate Cottonseed Association were as follows:   "If the buyer shall fail to order out purchases within the contract period, the sellers shall give him wire notice of his intention to sell same for his account, and then give orders to an impartial broker to sell same for his account."   "On October 29, 1926, plaintiff gave the defendant wire notice of his intention to sell to [for?] his account the said three carloads of hulls, amounting to 60 tons, and the said 15 tons of cottonseed meal, and on the 30th day of October, 1926, Jarrett-Feely Company, an impartial broker, did sell to account of said defendant at and for the price as follows:   15 tons of meal at $22.24 per ton, 60 tons cottonseed bulk hulls at $5.92 per ton, both sales being basic Douglasville delivery. . .   In order to resell said goods for said defendant under said contract plaintiff was forced to pay and it did cost him 25 cents per ton each commodity as a brokerage fee. Which said defendant became liable to plaintiff under said contract."   It was alleged that the plaintiff sustained, by reason of

the failure of the said defendant to comply with his contracts aforesaid, the following sums of money:

A loss of $5.76 per ton on 15 tons of cottonseed meal ....$  86.40
Broker fee of 25 cents per ton....................... 3.75
A loss of $3.08 per ton on 60 tons bulk hulls............ 184.80
Broker's fee of 25 cents per ton on 60 tons bulk hulls...... 15.00

Total amount sued for and for which defendant is indebted $289.95

It was alleged "that by virtue of the said contracts and the failure of the defendant to comply with his stipulations and agreements therein, he became and is indebted to this plaintiff in the sum of $289.95 as aforesaid, besides interest thereon at rate of seven per cent. per annum from October 30, 1926; that plaintiff has complied with every stipulation and term of said contracts with said defendant, and the defendant has failed to comply with his stipulations and agreements therein as aforesaid alleged; that this petition has set out every detail, agreement and condition and term of said contracts, wherefore no copies are attached as not being necessary." The defendant demurred generally and specially, the demurrer was overruled, and on this ruling he assigned error. He filed a plea in which he denied each and every paragraph of the petition, and by amendments to his plea he sought to set off certain amounts which he claimed were due him because of certain shipments of cottonseed hulls made to him by the plaintiff on September 13th, 22d, and 29th, 1926, and alleged that in each instance a sight draft was attached to the bill of lading, which draft he was forced to pay before he could unload said hulls, and in each instance the hulls had become heated and worthless; that he was damaged by the worthless hulls shipped to him $541.28, for which amount, less the amount for which plaintiff had sued him, he asked for a judgment against the plaintiff. When the evidence was all in, the judge directed a verdict for the plaintiff for the full amount sued for, including commissions, and the defendant excepted.

■ The ruling stated in the first headnote needs no elaboration.

■ The plaintiff offered in evidence a book purporting to contain the rules of the Interstate Cottonseed Crushers Association, the title page of which is headed as follows:  "1927-1928".  Then follow the rules.  The defendant objected to the admission of this book in evidence, upon the ground that the rules "are not certified copies of

the purported rules of Interstate Cottonseed Crushers Association; their authenticity has not been proved," and upon the further ground that "this book contains what purports to be the rules for 1927 and 1928 [the transaction in question having occurred in October, 1926]," and insisted that "the rules in force at the time of the alleged contract would be the highest and best evidence." The judge admitted the evidence. This was error. The record shows that "the Interstate Cottonseed Crushers Association was incorporated," and that minutes of the proceedings of their meetings were kept. In *Caudell* v. *Athens Savings Bank*, 140 *Ga.* 713 (79 S. E. 776), it was held: "Ordinarily the minutes of a corporation show the formal actions of its directors and stockholders; and before parol evidence thereof can be introduced, they should be produced or accounted for. Parol evidence, however, is admissible to prove the unrecorded acts and transactions of corporations, or of their officers or directors." See *Bank of Garfield* v. *Clark*, 138 *Ga.* 798 (7) (76 S. E. 95). In the case under consideration the minutes of the Interstate Cottonseed Crushers Association were not produced or accounted for, nor does the record show a certified copy thereof.

■ Plaintiff in error insists that the judge erred in directing a verdict, because it is settled law in this State that where a buyer refuses to pay for goods which he has bought, and the seller elects to sell the goods at the buyer's risk and brings suit under section 4131 of the Civil Code of 1910, he must first give "the buyer timely written notice of his election and also of the time and place of resale in order that the buyer may, if he desires to do so, attend the sale for the purpose of protecting his interest." *Bridges Grocery Co.* v. *Dan Joseph Co.*, 9 *Ga. App.* 189 (70 S. E. 964). Such a notice is essential (*Sims-McKenzie Grain Co.* v. *Patterson*, 10 *Ga. App.* 742, 73 S. E. 1080) and indispensable (*Cartersville Grocery Co.* v. *Taylor*, 31 *Ga. App.* 252 (2), 120 S. E. 447). See also *Felty* v. *Southern Flour and Grain Co.*, 140 *Ga.* 332 (78 S. E. 1074). The evidence for the plaintiff shows that the following telegram was sent to the defendant: "October 29, 1926. W. C. Abercrombie & Co., Douglasville, Ga. Hereby notify you selling for your account three carloads hulls, fifteen tons of meal. Georgia Distributing Co." On the copy of the telegram introduced it had "4.45 p. m." The defendant swore that he did not receive

such a telegram. Even if we concede that this telegram was a sufficient notice of the intention of the plaintiff to sell the hulls and meal and hold the defendant responsible therefor, if the defendant did not receive the notice he would not be bound by the sale. At least there was here a disputed question of fact that should have been submitted to the jury. Another telegram introduced in evidence is as follows: "Atlanta, Ga., October 30, 1926. W. C. Abercrombie & Co., Douglasville, Ga. Have instructions Georgia Distributing Company sell your account three cars bulk hulls, 15 tons meal. Jarrett-Freeley Co." This copy was marked, "Send at 5 p. m." Although the sale was made on October 30, this telegram shows that it must have occurred after 5 p. m. of that day. In *Bennett* v. *Mann,* 24 *Ga. App.* 581 (101 S. E. 706), the 2d headnote is as follows: "Whether a seller, who, upon the purchaser's refusal to take and pay for goods bought, elected to resell and recover the difference between the contract price and that obtained on the resale, exercised reasonable diligence to sell within a reasonable time and at the best price he could obtain is a question for the jury. *Robson* v. *Hale,* 139 *Ga.* 753 (78 S. E. 177); Carver v. Graves, 47 Tex. Civ. App. 481 (32 S. W. 826)." What is just quoted is applicable to this case.

■ The verdict directed embraced an item for broker's commissions. As, under our holding, the rules of the Interstate Cottonseed Crushers Association were improperly admitted, this case must be determined under the provisions of § 4131 of the Code of 1910. Under the provisions of that section the plaintiff, in such a suit as this, can not recover commissions, but can only "recover the difference between the contract price and the market price at the time and place of delivery." In *Allison Lumber Co.* v. *Decatur Lumber Co.,* 30 *Ga. App.* 613 (118 S. E. 597), this court, citing a number of cases to support the proposition, held: "Where a purchaser refuses to take and pay for goods bought, and the vendor elects to sell the property, the difference between the contract price and the price of resale constitutes the amount of the damages for the breach of the contract. Accordingly the trial court in the instant case did not err in striking from the petition, on special demurrer, certain items of expenses alleged to have been incurred in the shipment and resale of the goods in question, such as freight, taxes, demurrage, storage, labor, insurance, etc."

■ There was some evidence for the defendant to support his plea that the plaintiff shipped to him cottonseed hulls which had become heated and worthless. The contracts showing sales of hulls by the plaintiff to the defendant, which were in evidence, each had written on it the stipulation: "All claims to be made within ten days after arrival of cars at destination;" and although in his plea as amended the defendant stated that he "made immediate complaint to the said plaintiff and within ten days from the arrival of said cars at Douglasville, Georgia," there is no evidence to support this allegation. Although the defendant swore that he talked to Mr. Campbell of the Georgia Distributing Company about the bad hulls, there is no evidence that this conversation was within ten days after the arrival of the goods at Douglasville or that he then made claim for any damages sustained. On the contrary, B. N. Neal swore at the trial that he was the owner and manager of the Georgia Distributing Company, and that "the first time I ever heard about any bad hulls was about ten minutes ago." A new trial will not be granted because of the failure of the judge to submit to the jury the question of the right of the defendant to recover on his plea of set-off.

■ Because of the errors pointed out above, in subdivisions 2, 3, and 4, a new trial is ordered.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*