# SUPREME COURT OF TEXAS.

## AUSTIN TERM, 1877.

---

### J. P. Smith, Administrator, &c., v. J. F. Crosby.

LOCATIVE INTEREST—CONTRACT—MEASURE OF DAMAGES.—B furnished C with three land certificates, one for a league and two for a league and labor each, under a contract between them, by which he was to locate, survey, and procure patents on the certificates, in consideration of which C was to receive a locative interest of one fourth of the three leagues and two labors. C located, surveyed, and returned to the land office the three certificates, with the surveys thereof, and received patents on two of the surveys; but the third was not patented, because the certificate was invalid. In a suit between the parties, to adjust their interests in the land to which patents had issued, the amount of land to which C would have been entitled, out of all three of the surveys, was set aside to him as his interest in the two which were patented : *Held*—

1. C was not entitled to the decree as rendered, unless his contract was entire and indivisible.

2. C's contract was severable, and not entire and indivisible. It was a contract for the joint acquisition of land, by the location of the certificates, and not for acquiring the corresponding number of acres in a body.

4. There was nothing in the contract to show that the certificates could or would be located adjoining each other, or if they were, that the surveys would be of uniform value, or that the patents would be obtained at the same time.

5. The most that C can claim in reference to the certificate not patented, is that B shall compensate him for the damage he has sustained by the failure of B to furnish a valid certificate.

6. That damage must be ascertained by the rules applicable to settlements between those engaged in a joint enterprise for mutual profit, when expenses have been incurred by one on the faith of something agreed to be done by the other. Under these rules the measure of C's damage, in the absence of bad faith on the part of

(121)

B, would be the amount expended by C in locating and surveying his void certificate, and the reasonable value of his time and labor while thus engaged.

7. The measure of damages, as between vendor and vendee, in case of failure of title to land, is not applicable. A contract for the joint acquisition of the public domain is not a contract for the sale and purchase of land, and is not an agreement within the statute of frauds.

APPEAL from Tarrant. Tried below before the Hon. Hardin Hart.

On the 7th day of February, A. D. 1854, John Hancock entered into an agreement with J. F. Crosby to perfect title and procure patents to three leagues and two labors of land in El Paso county, Texas. Said Crosby was to have " a good and perfect title to one fourth of said three leagues and two labors" when patents were obtained for the same. Said Hancock was acting as the agent of M. T. Johnson, and his contract was ratified by said Johnson on the 30th December, A. D. 1857. Crosby released Hancock, and looked to Johnson for his locative interest on the 30th day of December, A. D. 1854. The lands were located by virtue of the certificate of James M. Day for one league; William C. Stanley, one league and labor; and John Bradley and wife for one league and labor. Crosby had the surveys made and returned to the General Land Office in 1854, and in the same year applied for patents, and patents were issued on the Day and Stanley claims, but were refused on the Bradley claim, on the ground that the certificate was invalid. Crosby immediately notified Hancock, who then notified him of Johnson's interest. About this time Johnson promised Crosby to provide another certificate, so as to secure the land located under the Bradley and wife claim, which Johnson failed to do.

The contract between Hancock and Crosby (subsequently adopted by Johnson) was carried out by Crosby in good faith, and all the duties and expenses relating thereto touching the location, surveying, &c., of the three leagues and two labors of land were performed and paid by him.

On the 10th September, 1861, Johnson, on settlement with Hancock, gave Hancock a bond for one fourth of a league of land in controversy. This suit was instituted by Hancock against the administrators of M. T. Johnson, deceased, for specific performance, making Crosby a party, and asking partition of the land, and making the heirs of Johnson parties. Crosby answered, and filed his (Crosby's) bill on the 13th May, 1873, acknowledging that he had received a conveyance of three hundred and twenty acres of land out of the William C. Stanley league from said M. T. Johnson, and asking that he might be decreed three quarters of a league and three quarters of two labors out of the William C. Stanley league, less the three hundred and twenty acres conveyed to him by Johnson, as acknowledged in his cross-bill.

The administrators of M. T. Johnson, deceased, and the heirs of said Johnson, in their answer, denied the right of Crosby to recover any portion of the William C. Stanley league as a locative interest for the Bradley certificate, to which title had failed. On the 21st November, 1873, Crosby amended his cross-bill, and claimed, that if he was not entitled to an interest in the William C. Stanley league, then he was entitled to the quantity claimed to be taken out of the James M. Day league and the William C. Stanley league and labor, less the three hundred and twenty acres conveyed to him by Johnson before that time, and that if he was not so entitled, he was entitled, by way of damages, to two dollars per acre, for one quarter of one league and one labor of land against the estate of M. T. Johnson, deceased, by reason of the fact that Johnson had failed to furnish him another certificate, after it was discovered that the Bradley certificate was worthless. A jury was waived, the cause submitted to the court, and a decree rendered for Hancock, for one fourth of a league; and for Crosby, for three thousand four hundred and nine and one half acres of land, out of the James M. Day league and the William C. Stanley league and labor, less three hundred and twenty acres, conveyed to

him by M. T. Johnson, in his lifetime. All the defendants, except Crosby, gave notice of appeal, as to the judgment in favor of Crosby.

*Smith & Jarvis*, for appellants.—Under the contract for the location of the lands, it will be seen that Crosby was only to have a locative interest in one quarter of the lands that were patented. The court had no right to compel a conveyance of eleven hundred and fifty-one and one quarter acres out of the Day and Stanley leagues to Crosby, for having located the Bradley league, to which title had failed. The law of specific performance for the purchase of land would apply in this case. Crosby, as a locator, could not stand on higher ground than a purchaser. "Upon a bill for specific performance, if the vendor's title to a part of the land sold is doubtful, the court cannot .compel him to make good that part by a conveyance of land out of the same survey to which he has an undoubted title, but will give a compensation in money." (See 1 Hilliard on Vendors, 445, tit. "SPECIFIC PERFORMANCE," chap. 25, par. 45, and authorities there cited; Kelly's Heirs *v.* Bradford, 3 Bibb, 321.)

If Crosby was entitled to anything for making the survey, and returning the field-notes of the Bradley claim to the General Land Office, he could only recover, upon proper proof, the value of his services, and expenses incurred for said survey and location.

*Walton, Green & Hill*, also for appellants.—Upon what principle of equity can it be claimed that a partner in a joint transaction can be held to refund to his copartner anything more than the expenses he has incurred about their copartnership business? To hold that Johnson was liable to anything more than expenses, unless he had been guilty of fraud, would be contrary to every principle of law and justice. The object of all the parties was to secure land that was thought to be a good investment. The title to a part failed. Crosby

knew it was vacant, and, on the failure of title, could, with propriety, have located the whole, after he had notified Johnson. But he chose to throw the whole burden on Johnson, instead of seeking to protect himself, having, in the meantime, let Hancock out of all responsibility.

But the face of the contract does not bear the construction sought to be placed on it. It was for the location, survey, and procuring patents for three several and distinct certificates, or rights to land, for which Hancock was to give one fourth. .

The performance of the service and procuring patent entitled the party performing it to his one fourth of the particular land patented, whether it should relate to one or more of the certificates to be located.

Johnson could not have resisted compensation for part performance; and such rights are correlative. The expression, therefore, that Hancock was to give for such services "one fourth of said three leagues and two labors," must be construed to mean an obligation on his part that, upon the performance of these several acts, or either of them, to be done by Crosby, a title should be made to him for the part thus performed, for the contract proceeds to fix a time of fulfillment on Hancock's part, to wit, "So soon as patents shall have been obtained for the aforesaid lands." Here, though the plural is used, yet as the acts to be performed were distinct and separate, and could not be performed at the same time, the contract was in relation to each distinct matter embraced in it, especially when we consider that, by the law and rule of practice in such matters, a patent was required to be issued on each certificate. The rule is well stated by Washington, J., in Perkins *v.* Hart, 11 Wheat., 237. The court says: "Where the agreement embraces a number of distinct subjects, which admit of being separately executed and closed, it must be taken distributively—each subject being considered as forming the matter of a separate agreement." (Robinson *v.* Green, 3 Metc., 159; Sickels *v.* Pattison, 14

Wend., 257; Carlton *v.* Woods, 8 Foster, 290; Main *v.* Payne, 3 Bing., 285; 2 Pars. on Cont., 517; 2 Story's Eq., 769.)

*J. F. Crosby*, for himself.—The argument of appellant's counsel, and the authorities therein cited, relating to that which seems to be the main point in the case, viz., the right of the appellee to a specific performance, to the extent of three fourths of a league out of the Day and Stanley leagues, is evidently predicated upon the hypothesis that there was but a part performance on the part of Crosby of his obligations under the contract. The contrary is fully shown. The loss of the Bradley and wife league was wholly through the fault and willful negligence of Johnson. The appellee would not have acted in good faith had he have placed a certificate (as it is contended he might have done) upon the land thus becoming vacant, or had he have given such information to others as to have enabled them to appropriate it. On the contrary, relying upon Johnson's oft-repeated promises, he kept this information to himself.

For the appellee, it is contended that he contracted for the location, &c., of the three leagues and two labors as an entirety; that, having performed his undertakings, he has an equitable lien upon any part of the three leagues and two labors for the agreed value of his services, and that it is inequitable to subject him to loss through Johnson's neglect.

Whatever may have been the original motives of Hancock in his dealings with Johnson, is of little import in the determination of this issue. Crosby was not a party to the contract, nor was he a participant in these motives. He had not sought the employment. When his services were invoked, the transaction was little, if any, further advanced than though it had never been commenced. The land was subject to relocation; no surveys had been made, and Crosby was under the necessity of undertaking this labor, as well as advancing all required expenses. The contract was undertaken by him at Hancock's

solicitation, and it referred to the three leagues and two labors as an entire transaction, and for his (Crosby's) services therein he was to receive three fourths of the above-named quantity of land. This was the understanding of the parties, and Crosby completed his entire undertaking. (Fort v. Barnett, 23 Tex., 464, and numerous cases referred to in Paschal's Dig., 7696.)

As to the construction of the contract, judged by the light of surrounding circumstances, see Haldeman v. Chambers, 19 Tex., 39.

Where a party, in whose favor something is to be done, in consideration of a promise to pay money, (or make title to land,) prevents that performance, and the other is not in default, the money (or the land) may be recovered, as if the act had been performed. (Smith v. Lipscomb, 13 Tex., 533.) The appellee undertook the location, surveying, and patenting a certain quantity of land; he was prevented from its accomplishment, in part, by the failure of Johnson to supply a valid certificate in lieu of that of Bradley and wife.

MOORE, ASSOCIATE JUSTICE.—The appellee, Crosby, by his cross-bill, upon which the judgment was rendered, from which this appeal is prosecuted, claims that, by reason of the fulfillment and performance on his part of the terms and conditions of the contract touching the locating, surveying, and procuring patents for three land certificates—one for one league, and the others for one league and labor each—which contract was between himself and John Hancock, subsequently ratified and approved by M. T. Johnson, he is entitled to a decree for one fourth of three leagues, and one fourth of two labors of land, out of the league, and the league and labor for which he had procured patents, although this was the entire amount of land to which he would have been entitled, had patents issued upon all of said certificates, and notwithstanding the fact that one of said certificates,

after its return to the General Land Office, was ascertained to be invalid, and for which a patent could not be obtained.

From the evidence, it clearly appears that Crosby had complied with and performed all the conditions and stipulations of the contract, on his part, for securing the lands on which the certificates were located, as fully and completely as it was possible for him to do; and the failure to procure the patent on the survey, which he had caused to be made by virtue of the unpatented certificate, was not through any default or neglect on his part. But although it should be conceded that the failure to secure the land thus located was attributable solely to Johnson, (and it was clearly shown that he had been guilty of a breach of his contract,) still it is evident that Crosby cannot claim the entire amount of land which he was to get for procuring patents on all of the certificates, while a part of them only have been patented, unless the contract by which he claims the right to do so is entire and indivisible.

No precise rule can be given, says Judge Parsons, by which it can be settled in each particular case, whether the contract is entire or separable. "Like most other questions of construction, it depends upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject-matter of the contract. If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such contracts will generally be held to be severable." (2 Pars. on Cont., 517.)

Applying these approved and well-established rules for determining the character of the contract upon which appellee relies, we think there can be no hesitancy in saying that it must be held to be severable, and not entire and indivisible. It was a contract for the joint acquisition of land by the location of the certificates, and not for acquiring the corresponding number of acres of land in a body. There

is nothing to show that it was contemplated that the certificates could or would probably be located adjoining each other, or, if they were, that the surveys would be of uniform quality and value, or that the patents upon them could be gotten, even approximately, at the same time. These considerations clearly show that equity and justice between the parties to such contracts require that they should be construed and treated as divisible, unless it is otherwise stipulated in plain and unmistakable terms. This, we think, is not the case in the present instance. The most that can possibly be said in support of the construction claimed by appellee, and given to this contract in the court below, is, that its language is somewhat ambiguous. This ambiguity in the written agreement between Crosby and Hancock is not, however, sufficient to negative the obvious conclusion deducible from the essential nature and character of its subject-matter, and the conclusion to which we would be otherwise led from the facts and circumstances under which it was made, to which we may properly look to ascertain and determine its true construction, and the real intention of the parties who are bound by it. (Perkins *v.* Hart, 11 Wheat., 237; Robinson *v.* Green, 3 Metc., 159; Sickels *v.* Pattison, 14 Wend., 257; Main *v.* Payne, 3 Bing., 285.)

The most that can be claimed for the locator, in such case as presented by the record, is, that he shall be compensated for the damage he has sustained by the act or default of the party undertaking to furnish the certificates. But what is the proper measure of such damage? This must be ascertained and determined by the rules and principles of equity applicable to settlements between partners or those engaged in a joint enterprise for mutual advantage, where expenses have been incurred by one of the parties in carrying out such enterprise, on the faith of what has been or was to have been done by the other, and from which, owing to such default, there has been a failure to realize the corresponding anticipated mutual profit. Ordinarily, and especially in the absence of bad faith of the

party whose act may have occasioned the loss, the measure
of compensation of the other party could not exceed the
amount by him expended, and the reasonable value of the
time and labor from which he can derive no benefit by reason
of such default, if, indeed, he can claim anything more than
that this amount, shall be apportioned between the parties in
proportion to their respective interest in the enterprise. This
contract, as we have said, was for the joint acquisition of
public or unappropriated land belonging to the State by the
owner of the certificates and the locator. It was not for the
sale and purchase of land by the one from the other, and
therefore, as has been often held, it is not an agreement
within the statute of frauds, consequently the measure of
damages, as between vendor and vendee, in case of failure
of title to land, is not applicable. But if so, as the time, labor,
and expenses incurred by the locator must represent the price
that he pays for that part of the land which he is to get, his
damages would not be materially different if the rule applic-
able between vendor and vendee should be applied, from
what they would be under the rule previously stated. To
allow him, as claimed by appellee, in his alternative prayer,
the value of his proportional part of the land upon which the
certificate was located, either at the date of the trial or at the
time of its location, would violate the rule which excludes
speculative profits in estimating damages for a breach of
contract.

But even if the contract by the party furnishing the certif-
icates could be analogized to the sale of the locative share of
the land to be acquired by procuring a patent upon each of
the certificates, the locator certainly cannot claim, by way of
compensation for the land which he has lost by a defect or
failure of the title to one of the certificates, a corresponding
quantity of land out of another tract for which he has obtained
the patent. (Kelley *v.* Bradford, 3 Bibb, 321.)

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.