**LUSHER et al. v. FIRST NAT. BANK OF FORT WORTH et al.**

**No. 15436.**

Court of Civil Appeals of Texas.
Fort Worth.

June 5, 1953.

Rehearing Denied Sept. 11, 1953.

McGee & Armstrong, and Elmo Irby, Fort Worth, for appellants.

Cantey, Hanger, Johnson, Scarborough & Gooch, and William B. Thompson, Fort Worth, for appellees.

MASSEY, Chief Justice.

From a judgment granting defendants a summary judgment, the plaintiffs appeal.

Affirmed.

During the summer of 1934, a Mrs. Mattie L. Lusher executed a deed, which was placed of record with revenue stamps affixed thereto. This deed purported on its face to be an unconditional conveyance of a one-half undivided interest in certain real property, to a Mrs. Henrietta A. Thomas. Both of these parties at the time in question were femmes sole. It appears that immediately prior to the time of the conveyance, Mrs. Lusher owed Mrs. Thomas notes, which, coupled with arrears taxes, totaled the sum of $12,526.40. Interest provided by the notes was seven per cent per annum. The consideration named in the deed of conveyance totaled $12,526.-40, by way of recitation of the amounts of the notes and taxes. The indebtedness and the instruments evidentiary thereof were canceled under and by virtue of the transaction, and Mrs. Thomas was shown to have paid the taxes.

Simultaneously with the execution and delivery of the deed in question, Mrs. Thomas executed and delivered to Mrs. Lusher an instrument, in consideration of the conveyance by way of the deed, agreeing that in the event Mrs. Lusher should desire to repurchase the property as represented by the deed, before Mrs. Thomas might have an opportunity to sell the same to some third person, that Mrs. Thomas would reconvey said property to Mrs. Lusher upon payment by her, or her representative, of the sum of $12,526.40, plus seven per cent per annum interest from the date of the deed to the date of such reconveyance, plus amounts expended for taxes, insurance and repairs; and in the event that Mrs. Thomas should (before exercise of such right to repurchase) sell the property to some third person for an amount in excess of $12,526.40, plus seven per cent per annum interest thereon from the date of the deed in question to the date such conveyance might be made, plus amounts expended for taxes, insurance and repairs, agreeing to deliver said excess over to Mrs. Lusher. The agreement provided that its obligations should be binding upon Mrs. Thomas' heirs. It further provided that it should not be placed of record, and no party ever placed it of record.

Approximately six years later both Mrs. Lusher and Mrs. Thomas died, without there ever having been any affirmative action on the part of either of them with respect to the agreement in question, and in so far as the deed records of Tarrant County, Texas, were concerned, fee simple title to the property in question was in Mrs. Thomas. Each of said deceased persons left a set of heirs, and as to the estate left by Mrs. Thomas all or a part of the same was left in the hands of a trustee.

About the first of 1952, the title to the property in question having never been alienated save by inheritance through the will of whichever of the parties had authority in such respect, the heirs of Mrs. Lusher tendered to the heirs and trustee of Mrs. Thomas' estate an amount based upon the agreement to reconvey executed in 1934, and requested action on the part of the heirs and trustee of Mrs. Thomas' estate reconveying the property in question to said heirs of Mrs. Lusher. This was refused, whereupon the heirs of Mrs. Lusher

filed suit in the district court of Tarrant County, Texas, to enforce the receipt by Mrs. Thomas' heirs and trustee of the money they were tendering, and a reconveyance of the property in question. The defendants in said suit, the heirs and trustee of Mrs. Thomas, filed a motion for summary judgment in their behalf, which was heard by the court and granted; from which judgment the plaintiffs, heirs of Mrs. Lusher, have appealed. There was a motion for summary judgment on behalf of the plaintiffs heard at the same time, and by the trial court denied, and the appeal taken extends to this action of the trial court, jurisdiction attaching by reason of the granting of the plaintiffs' motion.

The appellees raise in their brief the contention that this court does not have jurisdiction of parties to the appeal for want of a proper appeal bond filed by them, and for want of an appeal bond filed by any party other than by nominal party, R. Wright Armstrong. It is noted that Armstrong was a party to the original suit as the husband of one of the heirs of Mrs. Lusher. The sole manner in which this court is requested to act appears in appellees' brief, where, after thoroughly briefing the point, it is said: "* * * this appeal should be dismissed as to anyone, other than R. Wright Armstrong, who might attempt to come in and claim to be an appellant, now that this contest of jurisdiction has been made, the ground of dismissal being that this Honorable Court has no jurisdiction over any of the parties plaintiff who conceivably could have become appellants because of the failure of such litigants to satisfy Rule 354 by execution of an appeal bond, and it is further respectfully submitted that as to the one litigant who has executed an appeal bond by being made a principal therein, Armstrong, the appeal should be affirmed because he is but a 'nominal party who is not affected by the judgment' of the court below."

Rule 430, T.R.C.P., reads as follows: "When there is a defect of substance or form in any appeal or writ of error bond, then on motion to dismiss the same for such defect, the appellate court may allow the same to be amended by filing in such appellate court a new bond, on such terms as the court may prescribe."

The cause in the trial court was styled with John Oglesby Lusher et al. in the caption as plaintiffs, and in this court on the appeal with a like styling as appellants. As a matter of fact, the named plaintiffs in the trial court were John Oglesby Lusher and other named persons, all of whom constituted heirs under and by and through Mattie L. Lusher. In the original transcript appears the original cost bond on appeal, which was filed within the time provided by law to effectuate an appeal, reading as follows:

"Cost Bond on Appeal

"Whereas, in the above entitled and numbered cause pending in the 67th District Court of Tarrant County, Texas, and at a regular term of said Court, to wit, on the 22nd day of December, 1952, Judgment in favor of First National Bank of Fort Worth et al., defendants, was granted, from which judgment the plaintiffs, John Oglesby Lusher et al., desire to take an appeal to the Court of Civil Appeals for the Second Supreme Judicial District, sitting at Fort Worth, Texas:

"Now, therefore, know all men by these presents, that we, R. Wright Armstrong, as principal, and Mark McGee and C. L. Morris, as sureties, acknowledge ourselves bound to pay to Mrs. Lewis D. Wall, Jr., District Clerk of Tarrant County, Texas, $400.00 conditioned that the said John Oglesby Lusher et al., appellants, shall prosecute their appeal with effect and shall pay all the costs which have accrued in the Court below, and which may accrue in the Court of Civil Appeals and the Supreme Court."

■ Appellees' brief was filed more than thirty days after the transcript. Hence, there is no question but what appellees have waived the right to contest this court's jurisdiction of the merits of the appeal, and they do not attempt to do this, except as such might fail as to parties. Williams v. Wiley, 1902, 96 Tex. 148, 71 S.W. 12; Pillow v. McLean, 1935, 126 Tex. 349, 88 S.W.2d 702; Neely v. Tarrant

County, 1939, 132 Tex. 357, 124 S.W.2d 101.

■ Following the filing of the brief of the appellees, in which the question of jurisdiction was raised as indicated above, the parties named as appellants (and being all the parties plaintiff in the original suit) filed a motion for authority to file a supplemental transcript, and said supplemental transcript which was desired to be filed was attached to said motion and consisted solely of an instrument designated "Amended Cost Bond on Appeal," which had been filed in the trial court on May 1, 1953, which date was beyond the date on which an original bond supporting an appeal could have been filed. This "Amended Cost Bond on Appeal" was executed by all the parties participating as plaintiffs in the trial in the court below, establishing that all the parties plaintiff in the court below were prosecuting an appeal from the judgment entered in that court, provided the filing thereof be allowed by us.

The question involved is the discretion of this court to allow the making of the substitution for the original bond filed. What this court might determine as to the extent of its jurisdiction of the case as to the parties, were the amended cost bond on appeal not a part of the record before us, is not a question to be here decided and we expressly do not write with respect to such a question.

It is apparent from a consideration of prior holdings in cases relating to appeal bonds that the stated objective of the rules of civil procedure, to obtain just trials under substantive legal principles, has been most liberally applied. A statement in this regard is observed to have been made by former Chief Justice Alexander in the case of Grogan Mfg. Co. v. Lane, 1943, 140 Tex. 507, 169 S.W.2d 141, 142, as follows: "We think it is now well settled that if the appellant files any sort of an instrument which under a liberal interpretation may be said to be in fact a bond, same may be amended upon timely request, even though it be defective in either form or substance. * * *"

Chief Justice Hickman, while a member of the Commission of Appeals, and while

T.R.C.S., Art. 1840, was effective (now T. R.C.P. 430), stated in the case of Pillow v. McLean, 1935, 126 Tex. 349, 88 S.W.2d 702, 703, as follows: "In construing that article (T.R.C.S. 1840), this court, speaking through Justice Williams, in Williams v. Wiley, 96 Tex. 148, 71 S.W. 12, 14, used this language: 'The bond shows on its face that it was filed as an attempt to comply with the statute in order to prosecute the writ of error, complies in most respects with the statute, and must be held sufficient, under the liberal provision quoted, to give jurisdiction to the court, and to entitle plaintiffs in error to file a new one. It may, indeed, be seriously doubted whether or not, with such a statute in force, it should longer be held that the jurisdiction of an appellate court at all depends on the giving of a bond.' "

The case of Marlett v. Brownfield, Tex. Civ.App., Fort Worth, 1940, 140 S.W.2d 353, was a case in which the appeal bond originally filed recited that a Mrs. Balthrop (joined by her husband) was party appellant, though neither signed it as a principal. The bond was signed as principals by two sisters of Mrs. Balthrop, one of which was Mrs. Marlett, joined by their respective husbands. The body of the bond referred to Mrs. Marlett and her husband, in respect to their status on the appeal, only as sureties for the Balthrops. The court allowed an amended and substituted bond to be filed in which only Mrs. Marlett and her husband assumed the position of appellants, all other parties to the action who could have been appellants departing.

The authorities assembled by the appellees on the point all unquestionably appear to be cases where there was no attempt made to amend defective bonds filed in time and where the decisions rendered were based upon the condition of the bonds existent as part of the record at time the opinions were written. The question here involved being upon the propriety of our allowing an amended bond to be filed antecedent to assumption of authority to act upon the merits of the controversy, they have no application.

We overrule the motion as contained in the brief of appellees to dismiss the appeal

as to any party involved, and grant the motion of the appellants to admit the supplemental transcript containing the amended bond, and such bond is allowed to be and is ordered substituted for that in the original transcript.

Having assumed jurisdiction of all parties, as well as of the merits of the appeal, we find that the primary question before us is whether it is established, by the pleadings, motions and affidavits, admissions of fact by appellants, and exhibits, that the transaction ab initio was an equitable mortgage, or was contrarily either an unconditional sale with an option, or a conditional sale. Whatever it was then, it is now.

■ Generally, transactions of the nature of the one in question fall into one of these categories. As to which category, conventional tests applied to the particular facts in any individual case usually determine its proper status. These tests are applied to such transactions as of the time they were made and subsequent occurrences are not to be considered, unless evidentiary thereof.

■ A conditional sale of real estate is an executed contract passing title from a grantor to a grantee subject in the first instance to specific conditions upon which reconveyance is to be made to the grantor. Applying standard tests to the transaction to see whether it could be a conditional sale as to the property in question, it is found that an essential element of conditional sales contracts—as regards sales with provisions for repurchase—was lacking in the original transaction. This essential element of conditional sales contracts as to real estate is that of time within which the right to reconveyance is conditioned. Lack of such element infers probability that a transaction is an option or a mortgage. If an agreement to reconvey land does not embody expressions from which may be determined some time limitation upon the occurrence of which such reconveyance is to take place, it cannot be held to be a conditional sales contract. The condition upon which reconveyance is to be made must be specific. Bran-

non v. Gartman, Tex.Com.App., 1926, 288 S.W. 817.

■ It being established that the original transaction between Mrs. Thomas and Mrs. Lusher was in law something other than a conditional sales contract, let us examine the matter with view to determination of whether it might have been an unconditional sale of the property in question, coupled with an option to repurchase. An option passes no title but is an executory contract prescribing conditions upon the occurrence of which an optionee may become entitled to demand passage of title. An essential difference between an option and conditional sale is that in the former, when no provision is made for a time within which the optionee may accept the privileges thereof, the law will presume that a reasonable time is intended, but, as heretofore demonstrated, in a conditional sales contract there may not be such a presumption by law. Option contracts are among those in which "time is of the essence," and wherein when a time for performance is not specified the law will imply that a reasonable time is meant. 10 Tex. Jur. p. 56 et seq., secs. 31 and 32; 10 Tex. Jur. p. 413 et seq., secs. 237–240, inclusive; and see cases in 3 A.L.R. 576 and Suburban Imp. Co. v. Scott Lumber Co., 4 Cir., 59 F.2d 711, 87 A.L.R. 563.

Since, as applied to the original transaction between the parties and as to the language of the agreement, the parties provided for a right of reconveyance of the property to Mrs. Lusher upon the payment by her of fixed and determinable amounts (within an implied reasonable period), it is therefore readily determinable that the transaction could have been one of the status of an unconditional sale with an option to repurchase in Mrs. Lusher, conditioned upon her exercising such option of repurchase within a reasonable time.

There is no doubt but that more than a reasonable time had elapsed even before the death of the original parties to the agreement. Also, it is not questioned that rights or interests under the transaction were purely personal to Mrs. Lusher in the

event she only had an option. It is noted that such agreement was conditioned further in that such right to so exercise such optional privilege should not theretofore have been cut off by Mrs. Thomas' having had a prior opportunity to sell the property.

A mortgage does not pass title, but as to real estate is an executed contract pledging the title as a security for performance of an obligation by a legal or equitable owner. Since we have established that the transaction between Mrs. Thomas and Mrs. Lusher could have been an unconditional sale, coupled with an option to repurchase, let us similarly examine the transaction with view to determining whether it could have been an equitable mortgage. If it could be held to be such, title was never divested of the grantor, Mrs. Lusher, and mere passage of time could not have prejudiced the appellants. The rule is now well known and well settled that a deed which purports on its face to be a conveyance of property without qualification may be held to be a mortgage of the property as security for the payment of a debt. The rule has been recognized by the Texas courts since the earliest days. Luckett v. Townsend, 1848, 3 Tex. 119, 49 Am.Dec. 723. This follows the premise that whenever the purpose of the giving of the deed is the giving of security for a debt, then title does not pass and it is a mortgage only. Conway's Ex'rs v. Alexander, 1812–1813, 7 Cranch 218, 3 L.Ed. 321. See also the discussion in 29 Tex.Jur., beginning at page 799, and the cases there cited. · An oft quoted test in such cases is that laid down in 3 Pomeroy's Equity Jurisprudence, 4th Ed., sec. 1195, quoted in 29 Tex.Jur. p. 815, sec. 21: " 'The criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance, or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of the existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used, and whatever stipulations they may have inserted in the instrument. On the contrary, if no such relation whatsoever of debtor and creditor is left subsisting, then the transaction is not a mortgage, but a mere sale and contract of repurchase.' " See also Parmenter v. Kellis, Tex.Civ.App., Fort Worth, 1941, 153 S.W.2d 965, writ refused. Stating the same test in different words, "* * * but if the debt subsists, and that relation (of debtor and creditor) exists as well after as before the transaction, then the instrument will be considered as a mortgage." Hardie & Co. v. Campbell, 1885, 63 Tex. 292.

The rule is clear, the difficulty is in its application to the facts of a particular case. In the transaction under consideration, there was in fact an indebtedness, in part secured by a mortgage upon the property, owing by Mrs. Lusher to Mrs. Thomas, and there was some indebtedness by way of unpaid taxes, which was assumed and paid by Mrs. Thomas. In the deed executed by Mrs. Lusher to Mrs. Thomas, all this indebtedness was recited, and its cancellation and payment was expressly stated as constituting the consideration for the conveyance. Further, the deed recites the intention of the parties thereto in its execution to be "to convey to the said Mrs. Henrietta A. Thomas, a widow, all of the interest which I, Mattie L. Lusher, own and hold in the above described property, * * *." By reference to the record before the trial court at the time of the hearing on appellees' motion for summary judgment and now before us, it is disclosed that appellants had no additional evidence of probative force which they desired to or believed they had the right to introduce upon the matter here in question and shedding further light upon the transaction at the time it was made. Appellants have likewise so admitted in their argument before this court.

It appearing that the deed extinguished the debt owing by Mrs. Lusher to Mrs. Thomas and such debt having been discharged and satisfied by the deed delivery, there was not left any relationship between the parties where Mrs. Thomas was a creditor of Mrs. Lusher. Absence of such relationship precludes the transaction as a mortgage. Indeed, by reference to the proviso of the agreement executed coincidental with the execution and delivery of the deed, it unquestionably appears that Mrs. Thomas had the right to sell the property so received to whomever she wished and upon whatever terms that she might agree (a right inconsistent with a theory that the transaction was a mortgage), and if and in the event she did make such a sale to a third person—and for an amount in excess of that amount for which Mrs. Lusher was privileged to repurchase the property—then Mrs. Thomas was to owe Mrs. Lusher the overplus so received upon such sale. Without commenting in any way upon the validity of such part of the agreement (it not being necessary to decide the legality or enforceability thereof for the purposes of this opinion), it is worthy of note that had a sale been made of the property by Mrs. Thomas to a third person for an amount so in excess, Mrs. Lusher would have been (with obligation stipulated honored by Mrs. Thomas) in a position of creditor to Mrs. Thomas.

The transaction not constituting a mortgage, and not constituting a conditional sale, but by applied tests demonstrated to be an unconditional sale with an option to repurchase if exercised within a reasonable time of its making, the trial court's judgment was correct without consideration of the appellees' defenses, necessary to be considered only if the transaction might be held to constitute a conditional sale.

Appellants primarily cite as authority for their contentions these cases: Wells v. Hilburn, 1936, 129 Tex. 11, 98 S.W.2d 177; Brannon v. Gartman, Tex.Com.App., 1926, 288 S.W. 817; and Borden v. Hall, Tex.Civ.App., Beaumont, 1951, 1952, 255 S.W.2d 920. We will attempt to distinguish them from the case before us.

In these cases the transactions were held to be mortgages by reason of express or implied subsisting indebtedness for which the deed was delivered as security. In the Wells v. Hilburn and Borden v. Hall cases this was held to be implied. In the Wells v. Hilburn and Brannon v. Gartman cases it was held that a mortgage necessarily existed for want of the time element requisite to constitute a conditional sales contract where, of necessity, the transactions considered had to be held to be mortgages if not conditional sales contracts. In the Borden v. Hall case it was held that the transaction was a mortgage and the indebtedness was necessarily implied where the agreement stated that the deed was intended as a mortgage, where such could not constitute a conditional sales contract for want of the time element, and where also the fact that the transaction was not an unconditional sale affirmatively appeared.

In the Wells v. Hilburn case we have noted that it was agreed that the deed and agreement of reconveyance constituted either a conditional sale or a mortgage. In that case, by such agreement of reconveyance, it was provided that its benefits were provided to accrue to the heirs of the grantor of the deed. Under the facts established in the case before us, we are not limited or bound to hold the transaction as either a conditional sale or a mortgage. Also, the converse as to any benefits or obligations under the agreement of reconveyance exists. The language of the agreement provided that its terms should be binding upon the grantee's heirs, but conferred no rights to enforce the agreement to anyone other than to the grantor in the deed. In our case, the agreement was not made to benefit anyone but the grantor. From these circumstances there could here be no obligation upon us to reach the same conclusion as the court making the holding in the Wells v. Hilburn case. In these authorities the appellants cite it is indicated that there was in part or to some extent a necessity to make certain implications or apply tests in some degree greater or in enlargement of the conventional.

The conventional tests applied to the transaction here under consideration revealing its proper category to be that of an unconditional sale with option to repurchase in the grantor, there is no necessity to apply any further test or to make any implication for want of ability to establish the status by usual standards.

Judgment of the trial court is affirmed.