**Robbie Seale CLICK, Appellant,**

v.

**R. H. SEALE, Appellee.**

No. 12231.

Court of Civil Appeals of Texas, Austin.

Feb. 19, 1975.

Rehearing Denied March 19, 1975.

Terrence Kendall, Kendall, Randle, Finch & Osborn, Austin, for appellant.

Barry K. Bishop, Clark, Thomas, Denius, Winters & Shapiro, Austin, for appellee.

O'QUINN, Justice.

R. H. Seale, the appellee, brought this suit in March of 1973 to compel specific performance by Robbie Seale Click, the appellant, under two option agreements, made in July of 1962, by which Seale seeks to purchase two tracts of land, located in Robertson and Callahan Counties and owned by appellant.

At the time the agreements were entered into in 1962 appellant was the wife of Dr. L. L. Click, who later died in November of 1967. Both tracts of land were the separate property of Mrs. Click, and she was joined by her husband *pro forma* in both written option agreements.

The original agreements were made with Frank B. Seale, Mrs. Click's brother, who died in December of 1964, and this suit was brought by Seale's son as assignee from his mother and his two sisters of the two Click options.

In district court Mrs. Click answered Seale's suit and pleaded that at the time of the agreements, and thereafter until her husband's death more than five years later, she was an unemancipated married woman whose disabilities of coverture had not been removed, and who had not elected in any manner to have sole management of her separate estate; and that the option agreements were executory promises involving lands of her separate estate, which were unenforceable when made and also at the time of demand for performance by Seale in 1972, at the end of a ten-year period specified in the option agreements.

Mrs. Click also filed a cross action in which she again pleaded her unemancipated coverture at the time the agreements were entered into, and asserted that during the life of her husband, and shortly after her brother's death late in 1964, she advised Frank B. Seale's widow and the son, who were executors of Seale's estate, that she was rescinding the option agreements and would not perform the promise to sell the two tracts of land. Mrs. Click also sought damages by her cross action for wrongful detention and use of her lands by appellee after termination of the leasehold interests granted in 1962 simultaneously with the making of the option contracts.

After suit was filed, certain depositions were taken and the parties entered into

stipulations of various facts. Both parties filed motions for summary judgment and filed affidavits in support of the motions. Hearing before the trial court in May of 1974 resulted in judgment, entered July 3, 1974, denying Mrs. Click's motion for summary judgment and granting Seale's motion, with a decree that Seale have specific performance upon payment of the option price contained in the option agreements.

Appellant brings two points of error, being in brief that: (1) it was error to deny appellant's motion for summary judgment because the uncontroverted facts establish the two options to be executory contracts relating to the separate property of a married woman entered into while under disabilities of coverture which are unenforceable against her; and (2) it was error to grant appellee's motion for summary judgment decreeing specific performance of the covenants to convey.

We will sustain the points of error and reverse judgment of the trial court. We will render judgment that appellee take nothing by his suit. We will remand the cause for trial in conformity with this opinion on the issue only of appellant's cross action for damages.

The two written instruments under consideration are identical except as to description of the lands and the sums of money mentioned. Both writings are dated July 6, 1962. One instrument pertained to 5,420 acres of land in Callahan County, the other to 605.24 acres in Robertson County. Each tract was leased to Frank B. Seale for a term of ten years at an annual rent of $2 per acre. The leases were for a term of ten years, ending in 1972.

The agreements as to the option to buy each tract were expressed, in part, in this language:

"In consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable consideration paid the Lessors, the receipt and sufficiency of which is [sic] hereby acknowledged, Lessors hereby grant unto Lessee an irrevocable option to purchase said property after the term of ten (10) years has expired and on or before the expiration of six (6) months thereafter, at the price . . ." stated in specified sums, ". . . to be paid to Lessors by Lessee in cash."

The parties have joined issue on whether the writing, which contained both the lease agreement and the option agreement, was a contractual instrument that was "severable," or one that was "entire" or "indivisible." Allied closely is the issue as to whether the option agreement was executory and not a present conveyance of a part of the title, or was an instrument constituting an "encumbrance or conveyance" and therefore not executory, but a present grant of interest in the lands.

At the time the contracts were entered into Mrs. Click was married to L. L. Click and remained his wife until Dr. Click's death in November of 1967. It is stipulated that at no time did Mrs. Click elect to manage her separate property pursuant to Article 4614(d), Vernon's Anno.Civ.Sts., and the disabilities of her coverture were never removed except by her husband's death. It is stipulated that both tracts of land were the separate property of Mrs. Click.

Mrs. Click's position is that under statutes existing in 1962 when the contracts were made the option agreement could not be binding on her if she chose to repudiate the contract and refuse to perform under it.

Under the statutory law Mrs. Click invokes it was settled that the courts were *without power to require of a married woman specific performance of an executory contract to convey, either the homestead or the wife's separate property, when the wife refused to convey in accordance with the contract. In Jones v. Goff, 63 Tex. 248 (1885) the court said that ". . . in the sale and conveyance of the homestead, up to the very last moment

*before the privy examination is concluded and the title passes,* the married woman may absolutely defeat the conveyance by *declaring her wish to retract* all that had been done by her in the matter." (Emphasis added) (63 Tex. 255). The court pointed out that the statute made no provisions for the wife to enter into "agreements or executory contracts" to convey the homestead in the future, and that such an agreement was not one of the modes provided by statute by which a married woman could divest herself of the homestead right.

The rule in Jones v. Goff, in which homestead property was involved, was applied by the Supreme Court to the wife's separate property in Blakely v. Kanaman, 107 Tex. 206, 175 S.W. 674 (1915). In that case the married woman pleaded coverture in a suit for specific performance in reliance on Article 1114, R.S. 1911, a statute repeated without change as Article 1299 in the Revised Civil Statutes of 1925 and not repealed until 1963, more than a year after the making of the contracts with which we are concerned. (Repealed by Act 1963, 58th Leg., p. 1189, ch. 473, sec. 1, eff. August 23, 1963.)

In Blakely v. Kanaman the court said that such power as was possessed by a married woman with respect to her separate property was that conferred by the statute. The statute at that time, and until repealed in 1963, provided:

"The husband and wife shall join in the conveyance of real estate, the separate property of the wife; and no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband before some officer authorized by law to take acknowledgments to deeds for the purpose of being recorded, and certified to in the mode pointed out in articles 6605 and 6608 [6802 and 6805, in R.S. 1911]."

The basis for the decision in Blakely v. Kanaman is explicit in the language of the Supreme Court:

"This statute empowers her *to convey such property* when joined by her husband and her acknowledgment is privily taken, but it *recognizes no obligation resting upon her in virtue of a mere contract to convey.* Unless it can be properly held that the power to convey imports the authority *to contract to convey,* this contract was not enforceable against Mrs. Kanaman. This, in our opinion, is a matter of legislation, and not of judicial construction; for neither this statute nor any other in force at the time with which we are dealing in any wise purported to invest a married woman with authority *to contract to convey her separate real estate, or to make such a contract binding upon her.* Such has been the uniform rule of decision in this court." (Emphasis added)

Again, in Pickens v. Bacle, 129 Tex. 610, 104 S.W.2d 482 (1937), the rule was followed, the court speaking of an option to convey as "not a present conveyance" but as "nothing more than a part of the contract to convey when the option was exercised." The court repeated the rule: "It has been many times held that a married woman cannot make any contract with reference to her homestead or her separate estate *which is not a present conveyance of the whole or a part of her title.*" (Emphasis added) (104 S.W.2d 485)

Seale recognizes the rule, found in Jones v. Goff and the decisions that followed, that "a wife could not be bound to a contract to dispose of her separate property" if the contract *"was not a present conveyance of the whole or part of her title."* (Appellee's emphasis) Seale then argues that the writing in this case was not divisible but that "the instruments in question here plainly intended to grant, *in praesenti,* both a leasehold interest and an option to the leasehold remainder." Seale insists, "It is incorrect to describe the option right as an 'executory contract.'"

■ Even if we should hold that the writing is entire and not divisible, and that the option agreement was a contract to

sell, that contract would be executory and remain so until delivery and acceptance of a deed conveying the property. Podolnick v. Hamilton, 349 S.W.2d 715 (Tex.Sup. 1961). See also Williams v. Paine, 169 U.S. 55, 18 S.Ct. 279, 42 L.Ed. 658 (1897) and Snow v. Prince, 13 S.W.2d 342 (Tex. Comm'n App. 1929, judgment adopted).

We construe the writing to be severable and not entire, the lease agreement constituting an obligation separate and apart from the option agreement. When the terms of the contract are explicit, as in this case, construction of the writing is for determination by the court. The rule generally applied, and one adopted early by the Supreme Court, is that construction depends upon the intention of the parties, which must be discovered in each contract by considering the language employed and the subject matter of the agreement. Smith v. Crosby, 47 Tex. 121, 128 (1877). Generally the factors tending to show an intent to have separate and independent obligations are (1) the contracting to do two or more separate acts, (2) payment of consideration apportioned to separate acts or items, and (3) performance of one portion or act, and nonperformance of another, with acceptance of the performed portion by the other party. In Smith v. Crosby the court stated, quoting from Parsons on Contracts:

"If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such contracts will generally be held to be severable." (47 Tex. 128)

The fact that two agreements are embraced in one instrument will not make the writing entire and indivisible. Stanley v. Sumrell, 163 S.W. 697, 699 (Tex.Civ. App.Amarillo 1914, no writ). The same rule is applicable to oral contracts. See Morris v. Jones, 403 S.W.2d 855, 857 (Tex. Civ.App.Beaumont 1966, writ ref. n.r.e.). In *Stanley* "all the conditions of the con-

tract, save the one relating to the sale of the corn," had been performed by the parties and performance had been accepted. In the case under consideration, Seale performed all the terms of the lease agreements and Mrs. Click accepted the rentals. The only part not performed was the option agreement, which Mrs. Click elected not to perform in 1965, seven years prior to termination of the lease term.

In other respects the writing in this case falls within the rule of construction to render it severable. Separate consideration was provided by the parties with reference to the lease agreement and the option agreement. The lease agreement granted a present interest in the land, that being a leasehold interest extending through ten years, and the option agreement did not grant a present interest, but was an executory contract to be performed in the six months after the end of the lease period. Lusher v. First National Bank of Fort Worth, 260 S.W.2d 621, 626 (Tex. Civ.App.Fort Worth 1953, writ ref. n. r. e.). In *Lusher* the court said, "An option passes no title but is an executory contract prescribing conditions upon the occurrence of which an optionee may become entitled to demand passage of title." An executory contract contemplates a further instrument to pass title. Roberts v. Armstrong, 231 S.W. 371 (Tex.Comm'n App. 1921, holding approved); Knox v. Brown, 277 S.W. 91 (Tex. Comm'n App. 1925, judgment adopted).

The Supreme Court construed a lease contract in Wicks v. Comves, 110 Tex. 532, 221 S.W. 938 (1920), which the court held severable. A separate consideration was provided for lease of a fruit stand on and above the public sidewalk and lease of "inside space" not on the sidewalk. The first agreement failed as illegal, but the remaining agreement was held enforceable. "How can parties more plainly direct a severance of obligations," Justice Greenwood wrote, "than by stipulating that one shall be performed, for a separate consideration, upon the failure of another?"

By analogy we regard the reasoning in Wickes v. Comves as valid in this case, where the parties provided separate consideration for the leasehold grant and for the grant of an option, performance of the latter, if there should be performance, postponed until the end of performance of the former obligation.

■ Although Mrs. Click was bound under the leases and did not have the right to retract or disaffirm those covenants, by being bound under those contracts, she did not thereby lose her right under the executory contracts to retract and disaffirm her promises of an option to purchase. Estapa v. Saldana, 200 S.W.2d 722 (Tex.Civ.App. San Antonio 1947, no writ). In *Estapa* the separate property of the wife was leased under a written instrument, in which the husband joined, and under the terms of the writing the lessee was granted an option to purchase the leased property.

Saldana and wife, the lessors, brought suit to recover title and possession of the land from Estapa, who relied on the written contract to enforce his option to buy. Saldana's wife pleaded her coverture and asserted the lots were her separate property. Estapa contended the written contract, having been executed and acknowledged by both husband and wife, was valid and enforceable. The court of civil appeals held that under the contract "title did not pass to Estapa at the time" the contract was executed, and that the agreement was "but a covenant to convey provided Estapa decided to exercise his option." The court held that the option contract was executory and could not be enforced by way of specific performance. Authorities relied on by the court were Articles 1299, 4614, 6605, and 6608, V.A.C.S., Blakely v. Kanaman, *supra*.

Seale seeks to distinguish *Estapa* from the present case on the basis of an amendment to Article 4614 in 1957, prior to the making of the contracts under consideration in 1962. By that amendment the Legislature in 1957 provided if the wife should not elect to have sole management of her separate property, "the joinder of her husband shall be necessary to the encumbrance or conveyance by the wife of her lands," but as amended the statute no longer specified that joinder of the husband should be "in the manner now provided by law for conveyances of the separate real estate of the wife."

Seale relies on the decision in Diamond v. Borenstein, 410 S.W.2d 457 (Tex.Civ. App.El Paso 1966, writ ref. n. r. e.) in which the court decided "that a married woman is no longer confined to the strict procedural and other restraints applicable under the provisions of Article 1299, V.A. T.S." The Supreme Court refused application for writ of error, no reversible error, and approved the holding of the court of civil appeals in an opinion *per curiam*, stating:

"We approve the court of civil appeals' holding that the Legislature *by repealing art. 1299,* Vernon's Ann.Civ.St., removed the requirements of the husband's joinder and *the wife's privy acknowledgment* for an effective conveyance by the wife or her separate non-homestead property." (Emphasis added) (414 S.W.2d 454)

It is clear that repeal of Article 1299 in 1963, and not the amendment of Article 4614 in 1957, removed the requirement of "the wife's privy acknowledgment for an effective conveyance by the wife" of her separate property.

■ Seale contends that whatever right Mrs. Click had in 1962, when the option agreement was made, to retract and refuse to sell her separate property was taken away by repeal of Article 1299 by the Legislature in 1963, and the sweeping statutory changes in 1967 which became effective in 1968. It is a settled rule that parties making an agreement are presumed to know the law, and to contract with reference to the law, and they make the law a part of the contract. Kerr v. Galloway, 94 Tex. 641, 64 S.W. 858 (1901). When a statute affects a contract, as in this case,

not only the statute itself but construction of the law by the courts enter into and become a part of the contract. Smith v. Elliott and Deats, 39 Tex. 201, 211 (1873). The laws existing at the time of the making of the contract become as much a part of the agreement as if the laws were expressly referred to or incorporated in the terms of the writing. Winder Brothers v. Sterling, 118 Tex. 268, 12 S.W.2d 127 (1929). A substantive right conferred by the existing law, constituting a part of the agreement by implication, may not be defeated by a subsequent amendment of the law. Chesser v. Murphy, 386 S.W.2d 164, 168 (Tex.Civ.App.Houston 1965, no writ).

 The right of Mrs. Click to retract and refuse to perform an executory contract to convey her separate property was a substantive right not to be affected by subsequent changes in the law. *Chesser, supra*; Akin v. Thompson, 196 S.W. 625 (Tex.Civ.App.Fort Worth 1917, no writ); Mellinger v. City of Houston, 68 Tex. 37, 3 S.W. 249, 253 (1887); International & G. N. R. Co. v. Edmundson, 222 S.W. 181, 186 (Tex.Comm'n App.1920, judgment adopted). The vested right of Mrs. Click to disaffirm the option contract under the coverture statutes and the case law construing the statutes constituted her legal exemption from the demand of another, a valuable right the Legislature could not and did not take from her. Jenckes v. Mercantile National Bank at Dallas, 407 S.W.2d 260, 265 (Tex.Civ.App.Dallas 1966, writ ref. n. r. e.).

Seale argues that the Supreme Court in Allen v. Monk, 505 S.W.2d 523 (Tex.Sup. 1974), held that statutory changes applicable to contracts involving the wife's separate property and the wife's privilege to retract her consent apply to all contracts "whether executed before or after the effective date of the legislation."

 The facts of Allen v. Monk will not support this contention. The parties made their contract to sell the homestead after the effective date (January 1, 1968)

of the repeal by the Legislature of the pertinent statutes. It is elementary that interpretation of opinions of the courts are based on (1) the question under consideration at the time and (2) in accordance with the facts on which the opinion rests. 15 Tex.Jur.2d Courts, sec. 128, and cases cited. In Allen v. Monk the Supreme Court said, "The only question before this Court is whether relatively recent statutes have changed the prior law which denied the remedy of specific performance to enforce an executory contract for the sale of a homestead." The court carefully pointed out that "applicability of statutes and decisions must be divided into two parts . . ." (1) the period before repeal and (2) the period after repeal. It is undisputed that all the essential facts in the case occurred after repeal and not before.

The parties are not in agreement on appeal that the actions taken by Mrs. Click in 1965, shortly after her brother's death, constituted a retraction and disaffirmance of her obligation to perform under the option agreement if called upon to do so at the end of the lease term in 1972. The record shows that in 1965 Mrs. Click was in communication with W. S. Barron, a lawyer who had represented Frank B. Seale in a partition suit and was acquainted with Seale's widow and son, Henry Seale, who were executors under the elder Seale's will. Original letters written by Barron to Mrs. Click were identified and introduced when Barron's deposition was taken. The letters, together with Barron's oral testimony, tend to show notice to the widow and appellee that Mrs. Click wanted the option contract cancelled and "wanted the contract out of the way," and that the widow and her son declined at that time to agree that Mrs. Click had the right to disaffirm the option contract.

 In view of our conclusion that the several amendments to the statutes enacted by the Legislature in 1963 and in 1967 did not take from Mrs. Click her vested right to disaffirm, during coverture or afterwards, the executory option con-

tract made in 1962, we will not examine in detail the evidence related to her actions in 1965 with respect to retraction of the covenant. If we are mistaken in this conclusion, we hold without further discussion of the evidence that Mrs. Click's actions in 1965, during coverture and prior to her husband's death in 1967 and prior to repeal of the coverture statutes as of January 1, 1968, were sufficient to effect her disavowal of the option obligation. Since the option contract made in 1962 was voidable when made (Leake v. Saunders, 126 Tex. 69, 84 S.W.2d 993 (1935)), it continued to be voidable until Mrs. Click elected to disaffirm or to ratify and perform, even beyond the death of her husband and until such time as she might be called upon to perform by the other party, since it is the fact of coverture at the time the promise was made that renders the agreement voidable and not her marital status at the time fixed for performance.

In the trial court Seale moved for summary judgment, under which if affirmed Seale would be entitled to specific performance of the option agreements to purchase the two tracts of land. Mrs. Click also moved for summary judgment that Seale take nothing by his suit. The trial court granted Seale's motion and overruled the motion of Mrs. Click.

We have concluded that the judgment of the trial court granting Seale's motion for summary judgment and ordering specific performance was erroneous and should be reversed. Since both parties filed and urged motions for summary judgment below, we are authorized to render such judgment as the trial court should have rendered. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958). The rule of Tobin v. Garcia, stated briefly, is that ". . . where there was a final judgment rendered in a cause, which was appealable (and was appealed), the appellate court could act upon a denied motion for summary judgment, if the point has been properly preserved." See Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159

Tex. 442, 322 S.W.2d 492, 496 (1958) and Ackermann v. Vordenbaum, 403 S.W.2d 362, 364 (Tex.Sup.1966).

We reverse the judgment of the trial court and render judgment that appellee take nothing by his suit and that the instruments construed in this opinion be removed as clouds on appellant's title to the two tracts of land. We remand the cause to district court for trial only of the issue of appellant's damages pleaded by her cross action.

Reversed and rendered, with cause remanded for trial only of damages.